STATE EX REL. SCANDRETT and others, Trustees, Appellants, vs. NELSON, City Building Commissioner, and another, Respondents.

*April 8—May 5, 1942.*

For the appellants there was a brief by *R. M. Trump* of Milwaukee, and *Sanborn, Blake & Aberg* and *Edwin Conrad,* all of Madison, attorneys for Henry A. Scandrett, Walter J. Cummings, and George I. Haight, trustees of the property of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, and by *Roberts, Roe & Boardman* of Madison, attorneys for the Frank Fruit Company, and oral argument by *W. J. P. Aberg* and *W. Wade Boardman.*

For the respondents there was a brief by *Harold E. Hanson,* city attorney of Madison, and *Doris E. Lehner,* assistant city attorney, and oral argument by *Mr. Hanson.*

FRITZ, J. On this appeal there are involved the applicability and validity of a zoning ordinance of the city of Madison, and particularly subsection (2a) thereof, which was enacted on February 12, 1932, by an ordinance hereinafter referred to as the "Owen ordinance," and which, so far as here material, reads as follows:

"In every case where property has not been specifically included within a district or zone, except railroad property actually used or useful in the railroad business, the same is

hereby declared to be in the 'A' residence district. All property annexed to the city shall likewise be and hereby is declared to be in the 'A' residence district until otherwise changed."

This provision, if otherwise valid in so far as there is involved herein its applicability to the property upon which appellants desire to build a warehouse addition for which they seek a building permit, would be applicable thereto (if it was not actually used or useful in the railroad business) by reason of the fact that, when the provision was enacted, the property had "not been specifically included within a district or zone" under any zoning ordinance. Whether the provision is applicable and valid in respect to that property constitutes the principal question on this appeal, and if it must be held inapplicable, as relators contend, then they are entitled to the issuance of the building permit which was refused by the defendant on September 18, 1941, solely on the ground that under the Owen ordinance,—

"this property is zoned 'A' residential. Because it is zoned 'A' residential the present buildings located on this property are nonconforming as described in the zoning ordinance. Under the limitations provided for buildings of a nonconforming classification an addition to such a building is prohibited."

For the consideration and determination of that question, it suffices to note the following facts, which are undisputed.

The relators are the Frank Fruit Company (hereinafter called "Frank Company") and the trustees of the property of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company (hereinafter referred to as the "Railroad"). The latter in 1931 acquired title in fee simple to a triangular parcel of land consisting of all that portion of lots 2, 3, 4, and 5, in block 29, in the city of Madison lying southwest of the Railroad's right of way, excepting the parts of lot 2 designated "Gallagher Est." and "Present Building" on the accompanying plat of the southwesterly part of block 29.

The parts so designated are owned by and in the possession of the Gallagher Tent & Awning Company (hereinafter called "Gallagher Company") and the Frank Company, respectively. The adjoining portion of block 29, which is east and north of the portion shown on the above plat, consists of four lots numbered 6 to 9, inclusive, which front on West Wilson street and extend southeastward to the eastward continuation of the railroad right of way shown on the plat. This right of way has been used for railroad operating purposes since 1853, and in 1931 the Railroad acquired the portions of lots 2, 3, 4, and 5, in block 29, lying southwest of the right of way, which were not owned by the Frank Company and the Gallagher Company, and also acquired the portions of lots 1 and 2 lying northwest of the right of way; and since then these portions of lots 1 and 2 have been used for railroad purposes with a flagman's shanty, which is near the West Wilson street railroad crossing and which is used in connection with switching operations on the tracks. The Railroad's triangular portion of lots 2, 3, 4, and 5, southwest of

the right of way has been used by Frank Company, with the Railroad's permission, for the purpose of unloading produce from railroad cars, and has been available since 1931 to the public for public team-track purposes; and on this triangular portion there is a loading platform approximately seven hundred feet in length, which is now used by Frank Company and the Railroad for the purpose of facilitating the loading and unloading of freight. Approximately six cars are spotted daily on an industrial spur track adjoining the main tracks and the Frank Company premises. The original spur track running through the premises was built in 1921 and an addition was added in 1932; and approximately one thousand railroad cars are handled thereon during the course of a year. There are also spur tracks serving the J. H. Findorff & Son lumber-yard and planing mill, and the premises of Bay View Stone Company, Madison Fuel Company, Keystone Fuel Company, Southern Wisconsin Produce Company, and A. J. Sweet Company, fruit and vegetable business, located in blocks 27 and 28, which are on the north and south sides, respectively, of West Wilson street to the west of South Bedford street; and it is impossible for these concerns to conduct their businesses efficiently without spur-track facilities. Frank Company has been at its present location since the year 1921, when its original building was constructed upon the parts of lots 1 and 2 which it owned, and it has used these premises for fruit and vegetable warehousing and wholesaling from 1921 to the present time. In July, 1931, it applied to the defendant Nelson, as the commissioner of buildings, for a permit for the construction of an addition to its original building; and upon his rejection of its application it commenced an action to compel him by a peremptory writ of *mandamus* to issue such permit; and upon the issuance of the writ pursuant to stipulation between the parties, he issued the permit and the warehouse addition was built in 1931.

Under a general zoning ordinance of the city of Madison enacted in 1922 and revised in June, 1931, all of the property of the Railroad, Frank Company, and Gallagher estate, designated as all that part of lots 1, 2, 3, 4, and 5, in block 29, lying southwest of the railroad right of way was left unzoned. And unless the above-quoted subsection (2a), enacted by the Owen ordinance, which declares and classifies all unzoned property to be in the " 'A' residence district," and was intended as a blanket classification of all areas not otherwise zoned, and was enacted without specifically including the particular area or sector involved in this action, can be held applicable and valid as to the Railroad's portions of lots 2, 3, 4, and 5 lying southwest of its right of way, that property has never been zoned. On the other hand, under the present zoning ordinance, as revised in June, 1931, all that portion of lots 1, 2, and a part of lot 3 lying northwest of the railroad right of way is classified as " 'D' commercial;" and all of the rest of the property in block 29 to the north and east of the railroad right of way and also in the adjoining block 30, which is on the northwest side of West Wilson street, and in blocks 46 and 47 to the east of blocks 29 and 30, is zoned and classified as a " 'C' residence district" on both sides of West Wilson street. There are no residences on the parts of lots 1, 2 and the west half of lot 3, in block 29, lying northwest of the right of way, but there is a residence on the east half of lot 3. Most of the residences in block 29 were built before Frank Company's original warehouse was erected in 1921, and also antedate the establishment of the Gallagher Company business on lots 1 and 2 in or prior to 1915; and the portion of block 29, which is north and west of the railroad right of way, except the parts of lots 1 and 2, is essentially and predominantly residential. On the west side of South Bedford street the property in blocks 27 and 28 is zoned as "Industrial" and is largely used for that purpose. The Railroad property, upon which the proposed addition

is now to be built, is about one hundred feet east of the foot of South Bedford street and near the entrance from that street to Brittingham park, a segment of which is along and between the south boundary of the Railroad property and Lake Monona. On May 14, 1941, that portion of lots 2 and 3, in block 29, lying southwest of the railroad right of way, which is designated as "new addition" on the plat inserted above, was leased by the Railroad to Frank Company for the erection of the proposed warehouse addition, for the building of which Nelson refused to issue a building permit as stated above. The contemplated building is to be used for the conduct of Frank Company's business, and the unloading, under cover, of produce and merchandise from the cars of the railroad spur track; and the Railroad is to continue to spot cars on the tracks on the portions of lots 2, 3, 4, and 5, in block 29, which are not to be occupied by the new addition, in the same number and manner as presently, for the purpose of unloading produce and merchandise from such cars into the new addition; and the use to which Frank Company proposes to put the property here involved is "F" industrial. There are no "A" residential classifications under the terms of the present zoning ordinances within a radius of one mile from the Railroad's portion of lots 2, 3, 4, and 5 lying southwest of its right of way. Although that property has not been specifically included within any zone or district under any ordinance, it is contended by the defendant Nelson and the city of Madison that under the Owen ordinance that property is now "A" residential.

The court found, in connection with other matters, that the proximity of industrial plants to the Railroad's portions of lots 2, 3, 4, and 5, in block 29, lying southwest of the railroad right of way detracts from the value thereof for residential purposes but does not destroy it; that this property is part of a residential neighborhood and adaptable to and fit for residential purposes; and despite the circumstance that

water and other utility services will have to be run in to the property and it will have to be provided with access to the street, there is nothing inherently impossible in the property being used for a residence; and that simply because it runs back to a railroad spur track, it does not lose residence character although it is much more valuable to the Railroad for industrial occupancy in connection with its freight business. The court also found that the city authorities have treated the property in question for a few years as potential park property; that as early as 1903 the city leased lots 1, 2, and 3, in block 29, from the Illinois Central Railroad Company "for playground purposes," and on the "use" maps employed by the city, this particular parcel of land has customarily been carried as park land, and a project, which is in progress for filling in and building the "Lake Shore Drive" along Lake Monona, will necessitate municipal acquisition of the property; but that there is no evidence that the Owen ordinance of 1932 was passed with the intent to preserve this particular parcel as park or driveway property.

The court concluded, in so far as here material, that "the land here involved was erroneously classified by the Owen ordinance as residential 'A;'" that it is immaterial, however, whether it "is properly classified as 'A' residential or should have been 'C' residential like the rest of the residential portion of block 29;" that "the fact that the building commissioner relied on the 'A' provision of the Owen ordinance in denying the permit and thus gave an unsound reason for his denial, does not compel the court to issue a writ of *mandamus* where the writ otherwise should not issue;" that "the proposed 'F' industrial use by Frank Fruit Company is a nonconforming use in its relation to residence block 29;" that "*mandamus* should not lie to compel the building commissioner to permit this industrial 'F' use to extend in residential block 29;" that the Railroad's property "is not being confiscated by virtue of prohibiting the extension of a noncon-

forming use upon it;" and that "there being other issues than constitutionality, the doctrine of *State ex rel. Tingley v. Gurda,* 209 Wis. 63, does not apply and relators should have proceeded before the board of zoning appeals under sec. 62.23 (8) (b)," Stats. 1939, and "not having exhausted their administrative remedies, they are not entitled to *mandamus,*" and the peremptory writ should be denied.

In view of the court's finding and conclusion that all those portions of lots 2, 3, 4, and 5, in block 29,.lying southwest of the railroad right of way are not now "A" residential property, and that this parcel of land was erroneously classified by the Owen ordinance as residential "A," the relators contend that the attempted classification by the provision in the Owen ordinance that "In every case where property has not been specifically included within a district or zone, except railroad property actually used or useful in the railroad business, the same is hereby declared to be in the 'A' residence district," is unconstitutional and invalid, in so far as the classification is claimed by defendants to be applicable to the particular parcel of land in question, which obviously is not class "A" residential in character; and that therefore the relators were entitled to the issuance of the building permit in question. These contentions must be sustained. As was found by the court, there is no class "A" residence district within the radius of a mile from the parcel in question. On the other hand this parcel is not immediately adjacent to any property used or classified as residential, but is definitely separated from the class "C" residential zone to the northwest in blocks 29 and 30 by the right of way used since 1853 for railroad operating purposes with main tracks and also spur-tracks facilities to serve the premises and businesses of the above mentioned .J. H. Findorff & Son, Madison Fuel Company, Keystone Fuel Company, Bay View Stone Company, Southern Wisconsin Produce Company, A. J. Sweet Company, as well as the Gallagher Company and Frank Com-

pany. And, in connection with the spur track serving the latter, which was constructed in 1921 and extended in 1932, there has been along the Railroad's right of way a loading platform seven hundred feet long, used to facilitate the loading and unloading of approximately one thousand freight cars annually. Across South Bedford street in blocks 27 and 28, in which there are located the yards and plants used by the other business concerns above mentioned, the premises occupied by them in block 27 and all of the land in block 28 are classified and zoned as "F" industrial, although there are several residences in block 28. Adjacent to the southeast boundary of the parcel in question and between it and Lake Monona there is part of Brittingham park, which, as it extends eastward from the foot of South Bedford street along the parcel in question and the railroad right of way, is used as a baseball field and playground. In addition it appears from virtually undisputed evidence that while the parcel in question has a value of $1,350 to $1,800 for industrial purposes, it has virtually no substantial value for residential purposes at present.

In view of the foregoing facts and circumstances it is evident that although the parcel in question is of substantial value for industrial uses, it is surrounded to such an extent by property devoted to uses incompatible with and repugnant to the use thereof for residential purposes that it clearly cannot lawfully be included in the class "A" residential zone. If such classification thereof was intended by virtue of the Owen ordinance, there are applicable thereto, by analogy, the criticism and conclusions stated in *State ex rel. Tingley v. Gurda,* 209 Wis. 63, 69, 70, 243 N. W. 317, as follows:

"The trial court found that the value of the premises for such uses ranged from $15,000 to $19,350, while the value of such premises for residential purposes was approximately $3,000. This is a most extraordinary situation. Here is a block of land in an industrial center, valuable for industrial

purposes, condemned to a use for residential purposes, and for such purposes it is comparatively valueless. This situation should not result and cannot result from a *bona fide* administration of the zoning powers of the city. This situation in itself is sufficient to condemn the ordinance as an unreasonable exercise of power. . . . It is entirely beyond the purpose of the zoning law to condemn a block in the heart of an industrial section to residential purposes only, for which purposes it is largely valueless because of the reason that it is in the heart of an industrial area. We have little hesitation in pronouncing this ordinance, in so far as it places relator's property in a residential district, utterly unreasonable and void, for which reason the judgment of the lower court must be affirmed."

In point likewise, in so far as it is suggested that the application of the "A" residential classification to the parcel in question may be justified on the theory that it may be required by the city in the future to enlarge Brittingham park, is the following statement in the *Tingley Case, supra*,—

"In an effort to find the purpose of such a method of zoning, we find suggestions in the record that the city planning commission contemplates sometime in the future a boulevard along Mud creek and, with that in view, a zoning regulation has been promulgated destroying the value of the property which will later have to be taken for that purpose, so that the city may be able to carry out the boulevarding project with less expense to itself. While it may not be proper to thus interpret the motives and purposes actuating the city council in enacting the zoning ordinance, where such an unusual situation is found as appears here, such testimony may be given some weight. If such should be the purpose, it must reflect most seriously upon the good faith of the council and furnishes an opportunity to give warning that such maladministration of power may result in deprivation thereof. The zoning power is one which may be used to the great benefit and advantage of a city, but, as this case indicates, it is a power which may be greatly abused if it is to be used as a means to depress the values of property which the city may upon some future occasion desire to take under the power of eminent

domain. Such a use of the power is utterly unreasonable and cannot be sanctioned."

As we said in applying the above-stated conclusions in *Rowland v. Racine,* 223 Wis. 488, 493, 271 N. W. 36,—

"it is entirely beyond the purpose of a zoning ordinance to condemn a piece of property to solely residential purposes for which it, relatively, is largely valueless because it is and, at the time of the enactment of the ordinance, was clearly in the heart of an industrial or business district; and therefore, such an ordinance must be held utterly unreasonable and void in so far as it places such property in a residential district."

See also *Geisenfeld v. Shorewood,* 232 Wis. 410, 287 N. W. 683; *Pere Marquette Ry. Co. v. Township Board of Muskegon Township,* 298 Mich. 31, 298 N. W. 393; *Glencoe Lime & Cement Co. v. City of St. Louis,* 341 Mo. 689, 108 S. W. (2d) 143. The case of *State ex rel. Normal Hall, Inc., v. Gurda,* 234 Wis. 290, 301, 291 N. W. 350, is not in point in that the railroad property in question herein is not, as was the property of the relator in the *Normal Hall, Inc., Case,* "in a twilight zone or on the border line between an established residential neighborhood and a small local business area." On the contrary, the parcel in question herein is surrounded immediately by districts which have been used for many years for extensive industrial, commercial, and railroad operations; and has been definitely separated since 1853 by the railroad right of way from property which is north of the right of way and is now classified as class "C" residential.

It follows that, in so far as the parcel in question is concerned, the application of the " 'A' residence district" classification by virtue of the Owen ordinance is invalid because in respect to this parcel the classification is clearly so arbitrary, unreasonable, and unjustly discriminatory that it would be an invasion of the relators' constitutional rights under the equal-protection or due-process clauses of the federal or state

constitutions. *State ex rel. Tingley v. Gurda, supra; Rowland v. Racine, supra; Geisenfeld v. Shorewood, supra; Pere Marquette Ry. Co. v. Township Board of Muskegon Township, supra; Glencoe Lime & Cement Co. v. City of St. Louis, supra.* Consequently, as the "A" residential classification would be unconstitutional, and there is no other zoning classification under any ordinance which can be deemed applicable to that parcel, and the refusal to issue the building permit was based upon solely the Owen ordinance, the relators were entitled in this action to judgment ordering the issuance of a peremptory writ of *mandamus* to compel the issuance of the permit by the defendant Nelson. *State ex rel. Tingley v. Gurda, supra.* Inasmuch as there was no zoning ordinance applicable to the parcel in question, it is immaterial whether it could or should have been zoned as class "C" residential like the rest of lots 3 to 9, in block 29, to the north and east of the railroad right of way; or whether the use of the proposed warehouse addition will be a nonconforming use in relation to other property in neighboring areas to which there is a validly applicable zoning ordinance. Neither can the right of the relators to seek relief herein by a peremptory writ of *mandamus* be denied on the theory that they would have an adequate remedy in an action for a declaratory judgment. Such relief at best would still be inadequate, and there would be absent the additional relief obtainable only by a peremptory writ of *mandamus* to compel the issuance of the permit. Moreover, the relators were not required to appeal to the board of appeals under sec. 62.23 (8) (b), Stats. 1939, in view of their charges that if by the Owen ordinance it was intended to classify the parcel in question as class " 'A' residence" property, then it was unconstitutional on substantially the same ground that was held to render the ordinance invalid involved in the *Tingley Case, supra.* Consequently relators' remedy was by *mandamus* and not by an appeal to the board of appeals for reasons stated in that case as follows (p. 67) :

"In seeking the remedy of *mandamus* the relator relies on the fact that the ordinance is unconstitutional, under which circumstances an appeal to the board of review would afford him no relief whatever, as the board of appeals could not ignore the ordinance because it might consider it unconstitutional. The remedy existing under ordinary circumstances by an appeal to the board of review would not afford the relator relief, as his only contention is that the ordinance relied upon by the defendant is unconstitutional. It has been held that zoning boards of adjustment are not created as appellate bodies, and that legal or constitutional questions involved in zoning requirements are not a subject matter for the determination of such boards, but must be presented for consideration to the proper legal forum. It seems that, generally, their powers of review are limited to practical difficulties, or unnecessary hardship, in the way of carrying out the strict letter of the law. . . . It is our conclusion that in the instant case an appeal to the board of review would afford the relator no adequate relief, for which reason his resort to the remedy of *mandamus* is proper."

*By the Court*.—Judgment reversed, and cause remanded with directions to enter judgment ordering the issuance of a peremptory writ in accordance with the prayer in relators' petition.