KMIEC and wife, Respondents, v. TOWN OF SPIDER LAKE, Appellant: SAWYER COUNTY, Defendant.

*No. 205. Argued October 2, 1973.—Decided October 30, 1973.*
(Also reported in 211 N. W. 2d 471.)

For the appellant there were briefs by *Thomas J. Gallagher* of Park Falls, attorney, and *Powell, Gee & Hendricks* of Superior, of counsel, and oral argument by *Mr. Gallagher* and *Robert H. Gee.*

For the respondents there was a brief and a rejoinder to brief of amicus curiae by *Arthur De Bardeleben*, attorney, and *Joseph M. Recka* of counsel, both of Park Falls, and oral argument by *Mr. De Bardeleben.*

A brief amicus curiae was filed by *Robert W. Warren*, attorney general, and *Steven M. Schur*, assistant attorney general, attorneys for the department of local affairs and development.

CONNOR T. HANSEN, J. The plaintiffs purchased 296 acres of land in the town of Spider Lake on January 29, 1970. The land had some frontage on Clear Lake. They had previously toured the area and decided this 296-acre parcel of land was ideal upon which to make their permanent residence and begin a residential development which would encompass a golf course and clubhouse. Prior to purchasing the property, Mr. Kmiec spoke with the town chairman, William Bostrand, to determine whether the ordinances of the town of Spider Lake would permit his proposed development. Bostrand told him that the town ordinance would not prohibit the proposed development.

The property was purchased for $50,000. On September 14, 1970, a permit was obtained from the town clerk for the reconstruction of the old farmhouse, which would serve as their permanent residence on the lake, and for the construction of the clubhouse. Upon receipt of these permits, the plaintiffs began to work on the proposed development. In addition to remodeling the old farmhouse, they excavated and graded fairways for the proposed golf course, began building perimeter roadways, and excavated and performed transit readings for the clubhouse. Plans were prepared for the residences, clubhouse, and other facilities. A well was installed for the clubhouse and a layout was completed for a sprinkling system designed for the golf course. Heavy equipment, including a caterpillar, road grader, dump truck and tree transplanter, was purchased for the project.

Meanwhile, the Northwestern Regional Planning and Development Commission, of which Sawyer county is a member, was completing previously requested zoning studies of the area. Michael F. Morgan was in charge of the studies and program to develop a zoning ordinance for Sawyer county. The resources used in formulating the ordinance included a structure use map which classified the various structures which existed in the area as of 1968; an air photo of the western portion of Spider Lake township, apparently taken on May 30, 1966; an existing land use map indicating forest areas, swamp areas, etc.; and a land ownership map. Morgan did not inspect the property in question to determine its nature or use. He determined that the property was agricultural in nature and should be zoned A-1 on the basis of these photos and maps.

The proposed ordinance was submitted to the county zoning committee and they changed it to suit their needs.

On March 1, 1971, Sawyer county adopted the proposed zoning ordinance which became effective on March

26, 1971. The plaintiffs' property, except for their personal residence, was zoned A-1, agricultural district, under this ordinance. On April 10, 1971, the town of Spider Lake adopted this zoning ordinance with certain modifications and also classified plaintiffs' property A-1.

On September 23, 1971, plaintiffs were notified by the town of Spider Lake to cease and desist from any further construction, improvement or use of the land for a clubhouse and golf course.

### Issues.

The issues presented in this appeal are:

1. Whether plaintiffs should have been required to exhaust their administrative remedies before commencing this declaratory judgment action?

2. Whether the classification of plaintiffs' property as A-1, agricultural district has no logical basis and is utterly unreasonable, as determined by the trial court?

### Exhaustion of administrative remedies.

After the plaintiffs discovered the classification of their property under the new zoning ordinance, they petitioned the town board to change the classification of their property from A-1 to RR-1, residential-recreational. A hearing was held on July 6, 1971, at which approximately 150 townspeople were present. These townspeople were opposed to Kmiecs' petition for reclassification, and it was denied. Kmiec gave a handwritten notice to Stuart Heinemann, who was acting in the capacity of the zoning chairman, notifying him that he, Kmiec, wished to appeal their denial of his petition. Kmiec was subsequently notified by retained counsel that his notice did not conform to the statutory requirements of sec. 62.23 (7) (e), Stats., and that the town refused to take

further action with regard to it. Plaintiffs then commenced this action.

Kmiec also testified, at trial, that he attended a meeting of the county board of supervisors of Sawyer county on December 21, 1971, and requested a change in the classification of his property. This request was rejected.

In considering the issue of exhaustion of remedies, we would point out that there is a well-defined distinction in applying this judicial policy to the statutory administrative remedies in zoning cases. Such questions as the absence of constitutional due process in the manner in which the administrative agencies conduct proceedings, and which ordinances to apply, come within the scope of the doctrine of exhaustion of remedies. Issues such as these, though some of them may be constitutional in nature, such as due process, can properly be reviewed by a trial court in statutory certiorari proceedings. However, a challenge to the constitutional validity of a zoning ordinance presents a question of law. Such a challenge may properly be made by commencing an action for declaratory judgment and the doctrine of exhaustion of remedies is not applicable. *Compare: Master Disposal v. Village of Menomonee Falls,* post, p. 653, 211 N. W. 2d 477.

We would observe that many of the cases cited by both parties arise out of declaratory judgment proceedings challenging the validity of various zoning ordinances. However, in most of them the issue of exhaustion of remedies is not raised.[1]

*State ex rel. Tingley v. Gurda* (1932), 209 Wis. 63, 243 N. W. 317, although a mandamus proceeding, recognized that administrative zoning boards were not intended to pass upon legal and constitutional questions

---

[1] *Geisenfeld v. Shorewood* (1939), 232 Wis. 410, 287 N. W. 683; *Cushman v. Racine* (1968), 39 Wis. 2d 303, 159 N. W. 2d 67; *Heaney v. Oshkosh* (1970), 47 Wis. 2d 303, 177 N. W. 2d 74.

relating to the validity of a zoning ordinance, at page 68 it was stated:

". . . It has been held that zoning boards of adjustment are not created as appellate bodies, and that legal or constitutional questions involved in zoning requirements are not a subject matter for the determination of such boards, but must be presented for consideration to the proper legal forum. It seems that, generally, their powers of review are limited to practical difficulties, or unnecessary hardship, in the way of carrying out the strict letter of the law. . . ."

The zoning ordinance of the town of Spider Lake stands as a legislative act of the town. The review boards are administrative agencies which have been created by the same legislative body. Such administrative agencies are clothed with no right to repeal or declare unconstitutional zoning ordinances enacted by the legislative body from which it derives its existence. Therefore, the plaintiffs' remedy in seeking review by such an administrative agency under ordinary circumstances would afford the plaintiffs no relief because it is the plaintiffs' contention that the zoning ordinance relied upon by the defendant is unconstitutional as applied to his property.

This court recognized in *Jefferson County v. Timmel* (1952), 261 Wis. 39, 64, 51 N. W. 2d 518, that administrative remedies ". . . must be exhausted before a party can resort to the courts for other relief except in cases where the validity of the ordinance itself is attacked." It is also generally recognized:

"An owner of land restricted or adversely affected in use by a zoning ordinance may bring proceedings for a declaratory judgment as to the validity or constitutionality of the ordinance. One who claims that a zoning restriction is in excess of the jurisdictional authority of the zoning power need not stand by and await prosecution or injunctive proceedings by the municipality; he may bring an action for declaratory judgment to test the

legality of the zoning restriction. . . ." 22 Am. Jur. 2d, *Declaratory Judgments,* pp. 877, 878, sec. 29.

It is also recognized in 8A McQuillin, *Municipal Corporations* (1965 Rev. 3d ed.), p. 324, sec. 25.289:

"A proceeding for a declaratory judgment that a zoning ordinance is arbitrary, unreasonable and discriminatory, and hence unconstitutional, may be instituted in some instances without the necessity of exhausting all other remedies before attacking the ordinance. . . ."

It is our conclusion that in this case an appeal to the administrative agencies would afford the plaintiffs no adequate relief; therefore, their commencement of an action for declaratory judgment was proper.

### *Classification.*

It is undisputed that this property had not been utilized as farmland for at least eleven years before it was zoned A–1, agricultural district.

Arthur Best, a qualified expert appraiser of land in the Sawyer county area, testified that it would require $150 to $200 an acre to windrow and destroy the debris on the land in order to put it in farming condition again. After this expenditure the land would be worth $75 per acre as farmland.

It was recognized in *Cushman v. Racine, supra,* page 307:

"The most frequent instance of judicial interference with existing ordinances occurs in cases in which the court is able to conclude that the property in question is unfit for the use to which the ordinance restricts it. See *State ex rel. Schroedel v. Pagels* (1950), 257 Wis. 376, 43 N. W. 2d 349; *State ex rel. Scandrett v. Nelson* (1942), 240 Wis. 438, 3 N. W. 2d 765; *Geisenfeld v. Shorewood* (1939), 232 Wis. 410, 287 N. W. 683; *Rowland v. Racine* (1937), 223 Wis. 488, 271 N. W. 36; *State ex rel. Tingley v. Gurda* (1932), 209 Wis. 63, 243 N. W.

317. It makes no difference whether the ordinance invalidated was an attempt at spot zoning or whether its application, while more general, was found to be void merely in its application to the subject parcel."

However, "[e]ach case, in which the validity of such restrictions is challenged, must be determined on the facts that are directly applicable to the property of the parties complaining." *Rowland v. Racine* (1937), 223 Wis. 488, 493, 271 N. W. 36. A mere depreciation in value is not, ipso facto, sufficient to render the ordinance invalid. *Buhler v. Racine County* (1966), 33 Wis. 2d 137, 146 N. W. 2d 403; *Just v. Marinette County* (1972), 56 Wis. 2d 7, 20, 201 N. W. 2d 761. In *Buhler v. Racine County, supra,* page 143, it was held:

". . . Incidental damage such as diminution of value of land because of a restricted use does not violate due process unless the restriction practically or substantially renders the land useless for all reasonable purposes. *Nick v. State Highway Comm.* (1961), 13 Wis. (2d) 511, 109 N. W. (2d) 71, 111 N. W. (2d) 95. . . ."

Best testified that in his expert opinion the land had a negative value for agricultural purposes; that the best and highest use of the land would be residential-recreational; and proper zoning would be residential-recreational. He also testified that in his opinion the fair market value of the land as of January, 1970, was $50,000. He arrived at his estimate by dividing the 296-acre parcel into two components or "economic units." The frontage land on the lake was one economic unit worth $38,000 at that time. This unit would include the farmhouse and 20 acres. He valued the 1,382 feet of frontage property at $27.50 per front foot. The remaining 276 acres were valued at $45 per acre, or $12,000 for this second "economic unit."

Many improvements were made on the land and the residence after plaintiffs purchased this property and

Best estimated that total depreciated land improvements were valued at $64,270 as of March, 1972. The 1,382 feet of frontage land was valued at $30 per foot for a total of $41,460. This brings the value of the first economic unit (20 acres on the lake) to $105,730, as of March, 1972. The remaining 276 acres as of March, 1972, were valued at $50 per acre, for a total value of $13,800.

The proposed zoning district map reflects that the lake frontage land on both sides of this property were classified RR–1, residential-recreational, and that a substantial portion of all the lake-frontage property was so classified.

In *State ex rel. Tingley v. Gurda, supra,* the plaintiff's property was annexed to the city of Milwaukee. As a result, the zoning classification of the property was changed from industrial to residential. The value of the property ranged from $15,000 to $19,350 for industrial uses and for residential uses it had a value of approximately $3,000. *Tingley, supra,* page 69, states:

". . . This situation should not result and cannot result from a *bona fide* administration of the zoning powers of the city. This situation in itself is sufficient to condemn the ordinance as an unreasonable exercise of power. . . ."

The second "economic unit," the remaining 276 acres north and west of the lake frontage, properly presents a different situation. It was valued at the time of purchase at $45 per acre, or $12,000 for the entire 276 acres. As of March, 1972, it had increased in value to $50 per acre, or $13,800 for the 276 acres. As previously indicated, this land has a negative value as farmland. However, 80 acres of this parcel was a tree plantation. The plaintiffs have been transplanting these trees along the roadside and onto the golf course. The trees in this plantation are four feet to 12 feet high. The planting was poor and the trees were not tended. Best testified that

the plantation would be worth $25 per acre as pulpwood. Therefore, this 80-acre tree plantation was diminished in value some 50 percent. The adjacent land south and southwest of this tree plantation is classified F–1, forestry. This 80-acre tract probably could have been classified F–1. At least it cannot be said that the diminution in value of this 80-acre plantation from $45 to $25 per acre would be sufficient by itself to render the ordinance as it applied to this 80-acre plantation unreasonable and unconstitutional. However, even if this 80-acre tract of trees could be properly classified F–1, forestry, to conform to most of the land south and southwest as now classified, it is still not agricultural.

In view of all the facts, including the fact that the land had a substantial negative value as farmland, the entire 296-acre parcel does not meet the test of an agricultural zoning classification under any standard.

For many years, this court has recognized that controlled land use in an attempt to obtain orderly community development is a commendable purpose.

In *State ex rel. American Oil Co. v. Bessent* (1965), 27 Wis. 2d 537, 544, 545, 135 N. W. 2d 317, this court stated:

". . . As early in the history of zoning as *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 196 N. W. 451, this court considered a comprehensive zoning ordinance as justified in the exercise of the police power not only in the interest of public health, morals, and safety, but particularly for the promotion of public welfare, convenience, and general prosperity. General welfare was equated with the stabilization of the value of property and the promotion of the permanency of desirable home surroundings and of the happiness and comfort of the citizens. The court extolled the virtues and the community benefits of a planned development of a municipality as opposed to unplanned growth, concluding, 'The one compares to the other about as a well-ordered department store compares to a junk-shop.' . . .

"  . . .
"The concept of public welfare is broad and inclusive and embraces in comprehensive zoning the orderliness of community growth, land value, and aesthetic objectives. [Citations omitted.] . . .

"However, unreasonable classifications in zoning ordinances, whether comprehensive or not, and restrictions which are not reasonably germane to legitimate objectives or which prohibit a particular use of land ignoring its natural characteristics for such use or which are arbitrary have been held to be unconstitutional on the facts presented. [Citations omitted.] . . ."

Morgan, who initially placed the instant land in A–1 classification, testified that one of the purposes in putting land in this classification was to protect residential-recreational areas from encroaching on farmlands, and to prevent agricultural lands from encroaching on the "residential recreation on the lakeshore." He said that this A–1 classification was meant to serve as a "holding district," thereby controlling future development of the district. Morgan further testified that when he submitted the proposed zoning ordinance to the county he had a general plan for recommended land use in the area. Whatever the zoning authorities might have determined the proper future use and classification of this land to be pursuant to such general plan, there were and are options available to them other than the A–1, agricultural, classification. The record contains no justification for placing this nonagricultural land in an A–1, agricultural zoning classification. The trial court concluded, and we would agree, that "[n]o explanation or reason was advanced for zoning the lands A–1 within the design of the zoning statutes under either Sec. 59.97 (1) or 59.971 (1)."

In arriving at our conclusion, we are cognizant of the fact that an ordinance is presumed to be constitutional and that the attacking party must establish its invalidity beyond a reasonable doubt. Here the plaintiffs have met

that test. Furthermore, we recognize that this court will not interfere with the exercise of police powers by a municipality unless it is clearly illegal and that if there is any reasonable basis for the enactment of an ordinance it must be sustained. *J & N Corp. v. Green Bay* (1965), 28 Wis. 2d 583, 137 N. W. 2d 434; *State ex rel. Hammermill Paper Co. v. La Plante* (1973), 58 Wis. 2d 32, 46, 205 N. W. 2d 784.

We conclude, as did the trial court, that this zoning ordinance as applied to the lands of the plaintiffs is unconstitutional. The restrictions of the A–1 classification gives at least 216 acres of the plaintiffs' land a substantial negative value and the classification is without any reasonable basis. The classification is unreasonable and contravenes art. I, sec. 13 of the Wisconsin Constitution and the fourteenth amendment of the United States Constitution on the grounds of both due process and equal protection.

We have also considered the appellant's application for double costs pursuant to sec. 251.23 (3), Stats. The application is denied.

*By the Court.*—Judgment affirmed.