WISCONSIN SOCIALIST WORKERS 1976 CAMPAIGN COMMITTEE, John Doe, Individually and on behalf of others similarly situated, John Roe, Individually and on behalf of others similarly situated, Bernard Senter and Norbert Francis, Plaintiffs,

v.

E. Michael McCANN, Thaddeus C. Stawicki, Rosaline Brojanac, Joseph Carpenter, Marion L. Heaney and the State of Wisconsin, Defendants.

No. 76–C–73.

United States District Court,
E. D. Wisconsin.

June 13, 1977.

John Sundquist, Walther & Halling, Milwaukee, Wis., for plaintiffs.

Robert D. Donohoo, Asst. Dist. Atty., Milwaukee, Wis., for County.

John J. Glinski, Asst. Atty. Gen., Madison, Wis., for State.

John Kitzke, Asst. City Atty., Milwaukee, Wis., for defendants.

Before FAIRCHILD, Chief Circuit Judge, REYNOLDS, Chief District Judge, and WARREN, District Judge.

## MEMORANDUM AND ORDER

WARREN, District Judge.

The plaintiffs commenced this action under 42 U.S.C. § 1983 for declaratory and injunctive relief alleging that certain provisions of the Wisconsin Campaign Financing Act (the "Act") deprive them of rights of privacy of association and belief guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.[1]

---

1. The plaintiffs challenge the following provisions of the Wisconsin Campaign Financing Act:

11.06 Continuing reports; filing requirement and funding procedure

(1) Contents of report. Except as provided in s. 11.05(2r), each registrant under s. 11.05 shall make full reports, upon a verified form prescribed by the board, of all contributions received, contributions or disbursements made, and obligations incurred. The reports required to be filed by this subsection shall be cumulative during the calendar year to which they relate, but where there has been no change in an item reported in a previous report during such year, only the amount need be carried forward. Each report shall contain the following information, covering the period since the last date covered on the previous report, unless otherwise provided:

(a) An itemized statement giving the date, full name and street address of each contributor who has made a contribution in excess of $20, or whose contribution if $20 or less aggregates more than $20 for the calendar year, together with the amount of such contribution, and the cumulative total for the calendar year.

(b) The occupation and principal place of business, if any, of each individual contributor whose cumulative contributions for the calendar year are in excess of $100.

     *     *     *     *     *     *

(g) An itemized statement of every disbursement exceeding $20 in amount of value, togeth-

Jurisdiction attaches under 28 U.S.C. § 1343(3) (1970).

The gravamen of the complaint is that the compelled disclosure of contributors and disbursement recipients of the Wisconsin Socialist Workers 1976 Campaign Committee will subject them to threats, harassment and reprisals from government officials and private parties. The plaintiffs contend that this form of harassment and the resulting chill of free expression and association is of the type identified in *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and recognized in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In such circumstances, it is urged that the insubstantial interests of the state in disclosure must give way to the First Amendment rights of the plaintiffs.

## PARTIES

Plaintiff Wisconsin Socialist Workers 1976 Campaign Committee (the "Campaign Committee") is a committee of individuals formed for the purpose of promoting, supporting and publicizing the candidacies of persons nominated by the Socialist Workers Party of Wisconsin. Plaintiff Norbert Francis is the secretary of the Campaign Committee. Plaintiff Bernard Senter was the Socialist Workers Party candidate in the February 17, 1976, primary election for the office of Mayor of the City of Milwaukee.

Plaintiffs John Doe and John Roe are individuals who have contributed or who intend to contribute a sum in excess of $20.00 to the Campaign Committee. These plaintiffs represent the class of all past and future contributors of sums in excess of $20.00.[2]

The defendants are responsible for the implementation of the Act. Defendants Thaddeus C. Stawicki, Rosaline Brojanac, Joseph Carpenter, and Marion L. Heaney are all members of the City of Milwaukee Board of Election Commission (the "Election Board"). Their duties are set forth in section 11.21 of the Act. Defendant E. Michael McCann is the district attorney for Milwaukee County and is responsible for the prosecution of all local civil and criminal violations. Defendant State of Wisconsin is a party because the constitutionality of a state statute was drawn into question.

## PROCEDURAL BACKGROUND

On January 23, 1976, the Campaign Committee wrote to defendant Stawicki and requested an exemption from the personal disclosure requirements of the Act.[3] Stawicki responded with a telephone call on Jan-

---

er with the name of the person or business to whom the disbursement was made, and the date and specific purpose for which such disbursement was made.

(h) An itemized statement of every obligation exceeding $20 in amount or value, together with the name of the person or business with whom the obligation was incurred, and the date and the specific purpose for which each such obligation was incurred.

2. Based on a stipulation by and between the parties, an order certifying the class was entered on October 27, 1976. The class represented by plaintiffs John Doe and John Roe was designated as follows:

(a) All persons who have contributed sums in excess of $20.00 to the Wisconsin Socialist Workers 1976 Campaign Committee.

(b) All persons who, but for the disclosure requirements of the Wisconsin Campaign Financing Act, would contribute sums in excess of $20.00 to the Wisconsin Socialist Workers 1976 Campaign Committee.

3. The filing requirements of the Campaign Act are set forth in section 11.20 which reads in pertinent part as follows:

(1) All reports required by s. 11.06 which relate to activities which promote or oppose candidates for state office or statewide referenda and all reports under s. 11.08(1) shall be filed with the board. All such reports which relate to activities which promote or oppose candidates for local office or local referenda shall be filed with the appropriate *filing officer* under s. 11.02. (emphasis added)

Defendant Stawicki conceded that he was the "filing officer" for the Campaign Committee. Affidavit dated March 2, 1977. Defendants Brojanac, Carpenter and Heaney thereafter moved to dismiss upon the ground that they were not filing officers and that they took no action with respect to Campaign Committee reports. Based on the aforestated affidavit, the plaintiffs withdrew their opposition to the motion and an order dismissing the action as to defendants Brojanac, Carpenter, and Heaney was entered on March 25, 1977.

uary 26, 1976, informing the Campaign Committee that he could not grant an exemption or hearing and that any deficient report would be referred to the Milwaukee County District Attorney.

On January 27, 1976, the Campaign Committee filed its financial report. The report included all information called for with the exception of the names and addresses of individual contributors and certain individual recipients. The Campaign Committee did disclose the dates and the amounts of these contributions and disbursements.

In a letter dated January 27, 1976, defendant Stawicki advised the Campaign Committee that the financial report did not conform to the requirements of the Act. Shortly thereafter, the matter was referred to defendant McCann for possible civil or criminal prosecution.[4]

On February 4, 1976, this action was commenced. Plaintiffs initially moved for a temporary restraining order and the designation of a three-judge court. On March 11, 1976, an order of dismissal was entered as to defendants Brojanac, Carpenter and Heaney.[5] On March 16, 1976, the State of Wisconsin moved to intervene as a party defendant. This motion was not opposed and on March 19, 1976, leave to intervene was granted.

The motion for a temporary restraining order was heard on March 19, 1976, and a written order restraining the defendants from enforcing the disclosure provisions of the Act against the plaintiffs was entered on April 2, 1976. On April 6, 1976, the present three-judge court was designated.

The action was then held in abeyance pursuant to a stipulation of the parties to await an official opinion of the Attorney General which would address, *inter alia,* the authority of the Election Board to exempt parties from the disclosure requirements of the Act. On August 16, 1976, the Attorney General ruled that the Election Board lacks this authority.[6]

On August 31, 1976, the parties stipulated that the trial on the merits be advanced and consolidated with the hearing on plaintiffs' motion for a preliminary injunction; that an evidentiary hearing be waived and that the case be submitted on briefs and affidavits; and that the action be maintained as a class action.

The cause came on for a hearing on the briefs and affidavits of the parties on February 2, 1977. The only issues raised at the hearing were abstention and the sufficiency of plaintiffs' evidence.

I.

Several theories of abstention were raised by the parties. Relying upon *Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and an alleged uncertainty in the law, defendant E. Michael McCann argued that the Act was susceptible to a construction which would avoid the constitutional issue before the Court.

■ When pressed as to how this could be accomplished, McCann advanced two theories. He first asserted that the statute could be construed to provide the Election Board or the local filing officer with authority to grant exemptions for minor parties. The general rule in Wisconsin is that administrative agencies have only those powers that are expressly granted to them or which are necessarily implied from the statutes setting forth their responsibilities. *State ex rel. Farrell v. Schubert,* 52 Wis.2d 351, 190 N.W.2d 529 (1971); *Nekoosa-Edwards Paper Co. v. Public Service Commission,* 8 Wis.2d 582, 99 N.W.2d 821 (1960).

---

4. In a letter to the Campaign Committee dated March 11, 1976, the District Attorney's office indicated an intention to proceed against defendant Norbert Francis and not the Campaign Committee under section 11.60. Section 11.60 provides civil penalties for any person, committee, or group that violates any provision of Chapter 11 of the Wisconsin Statutes.

Although the District Attorney's office was apparently authorized to proceed against defendants Norbert Francis and the Campaign Committee, no action was ever commenced.

5. See footnote 3, supra.

6. Opinion of the Attorney General of Wisconsin, No. 55–76, dated August 16, 1976, at p. 10–12.

■ The duties of the Election Board are set forth in section 11.21 of the Act. No provision is made for the grant of exemptions to any party or individual. The duties of the Election Board are in large part ministerial and include, *inter alia,* the receipt and review of all reports *required* by the Act. Deficient reports are to be referred to the district attorney's office. The Election Board has no discretion with regard to the filing requirements of the Act or the referral of violations to the district attorney's office.

The duties of the local filing officer are set forth in section 11.22 of the Act and are similar to those of the Election Board. Again, no provision is made for the grant of exemptions to any party or individual. The filing officer has no discretion with regard to filing requirements or the referral of violations for prosecution.

The Wisconsin Administrative Procedure Act (the "WAPA"), Ch. 227, Wis.Stats., was cited as a possible basis for the authority of the Election Board to grant exemptions. While the WAPA confers rule-making authority on state agencies, that authority is limited to those rules that are "necessary to effectuate the purpose of the statutes [and] such rules are not valid if they exceed the bounds of correct interpretation."[7] The grant of an exemption under the Act as discussed above would exceed the bounds of correct interpretation.

The WAPA also empowers state agencies to issue declaratory rulings with respect to the applicability to any person of any rule or statute enforced by the agency.[8] There is, however, no uncertainty as to the coverage of the Act with regard to political parties formed for the purpose of advancing candidates for public office.[9] The Election Board could only grant an exemption if it ruled on the constitutional applicability of the Act to the plaintiffs.

7. 227.014 Extent to which the administrative procedure act confers rule-making authority

(1) Except as provided in sub. (2) and as otherwise expressly provided in this chapter, nothing in this chapter confers rule-making authority upon or augments the rule-making authority of any agency.

(2) Rule-making authority hereby is expressly conferred as follows:

(a) Each agency is authorized to adopt such rules interpreting the provisions of statutes enforced or administered by it as it considers to be necessary to effectuate the purpose of the statutes, but such rules are not valid if they exceed the bounds of correct interpretation.

(b) Each agency is authorized to prescribe such forms and procedures in connection with statutes to be enforced or administered by it as it considers to be necessary to effectuate the purpose of the statutes, but nothing in this paragraph authorizes the imposition of substantive requirements in connection with such forms or procedures.

(c) Each agency which is authorized by law to exercise discretion in deciding individual cases is authorized to formalize the general policies which may evolve from such decisions by adopting such policies as rules which the agency will follow until they are amended or repealed. Such rules are valid only to the extent that the agency has discretion to base its individual decisions on the policies expressed in the rules.

8. 227.06 Declaratory rulings

(1) Any agency may, on petition by any interested person, and shall upon reference of a case in accordance with s. 227.05, issue a declaratory ruling with respect to the applicability to any person, property or state of facts of any rule or statute enforced by it. Full opportunity for hearing shall be afforded to interested parties. A declaratory ruling shall bind the agency and all parties to the proceedings on the statement of facts alleged, unless it is altered or set aside by a court. A ruling shall be subject to review in the circuit court in the manner provided for the review of administrative decisions.

\* \* \* \* \* \*

9. 11.05 Registration of political committees, groups and individuals

(1) Every political party committee, every other political committee other than a personal campaign committee, and every political group under s. 11.23 which makes or accepts contributions, incurs obligations or makes disbursements in a calendar year in an aggregate amount in excess of $25 shall file a verified statement with the appropriate filing officer giving the information required by sub. (3). In the case of any committee other than a personal campaign committee, the statement shall be filed by the treasurer. A personal campaign committee shall register under sub. (2g) or (2r).

\* \* \* \* \* \*

It is generally recognized that administrative agencies do not have the authority to rule on the constitutionality of statutes which they are empowered to enforce. 1 Am.Jur.2d *Administrative Law* § 185 (1962). In certain circumstances, an implied power to rule on the constitutional applicability of such statutes has been found. *Doe v. Martin,* 404 F.Supp. 753 (D.D.C.1975). In *Martin,* the Court reviewed the legislative history of the District of Columbia Election Act, D.C.Code, sec. 1–1101 *et seq.,* and determined that the Board had the power to rule on constitutional applicability because of the broad grant of rule-making authority under the Election Act.[10] The rule-making authority of administrative agencies under the WAPA is more circumscribed as noted above and provides little authority for the expansion of agency power found in *Martin.*

The Wisconsin courts have not addressed the power of state agencies to rule on constitutional applicability under section 227.06. The Wisconsin Supreme Court has, however, indirectly addressed the general power of administrative agencies in this regard. In *Kmiec v. Town of Spider Lake,* 60 Wis.2d 640, 211 N.W.2d 471 (1973), the plaintiffs claimed that a zoning ordinance could not be constitutionally applied to them. The defendant raised the argument of exhaustion of administrative remedies. The Court rejected this argument.

The zoning ordinance of the town of Spider Lake stands as a legislative act of the town. The review boards are administrative agencies which have been created by the same legislative body. *Such administrative agencies are clothed with no right to repeal or declare unconstitutional zoning ordinances enacted by the legislative body from which it derives its existence.* Therefore, the plaintiffs' remedy in seeking review by such an administrative agency under ordinary circumstances would afford the plaintiffs no relief because it is the plaintiffs' contention that the zoning ordinance relied upon by the defendant is unconstitutional as applied to his property. Id. at 646, 211 N.W.2d at 474. (emphasis added)

The Court has also adopted the proposition "that any reasonable doubt of the existence of an implied power of an administrative body should be resolved against the exercise of such authority." *State ex rel. Farrell, supra,* 52 Wis.2d at 358, 190 N.W.2d at 533. It would appear that Wisconsin has adopted the view that administrative agencies are not empowered to rule on constitutional applicability and section 227.06 has not been construed to the contrary.

In the final analysis, the Court is persuaded that there is no express authority for the grant of exemptions for minor parties. Moreover, the mandatory nature of the filing requirements and the ministerial duties of the Election Board and the filing officer leave little room under the Act or the WAPA, absent judicial fiat, for the conclusion that such authority is necessarily implied. The Attorney General of the State of Wisconsin reached a similar conclusion in an official opinion dated August 16, 1976.[11]

---

**10.** See footnote 16, 404 F.Supp. at 762.

**11.** The Attorney General's Opinion reads in pertinent part as follows:

State agencies are granted certain general powers to interpret and apply the statutes which they administer. Sec. 227.06, Stats. Chapter 11 not only fails to address the question of who may grant exemptions, but is devoid of any recognition of a potential need for exemptions. I have considered the question of whether, standing alone, sec. 227.06 provides authority for the Board to decide applications for exemptions. Such a power, even in the absence of express statutory authority, was found by the court in *Doe v. Martin* (D.D.C.1975), 404 F.Supp. 753, under the District of Columbia Campaign Finance Act. An administrative agency's power to pass on the constitutional *applicability* of statutes has been recognized to a limited extent even though administrative agencies have no power to pass on the constitutionality of the legislation itself. See 3 K. Davis, *Administrative Law Treatise,* sec. 20.04 (1958). Wisconsin courts have not considered these questions and I must therefore conclude that the Board's power to make determinations of exemptions for minor parties under sec. 227.06 is doubtful. Id. at p. 11.

■ The second theory advanced in favor of abstention is that the statute could be construed to be inapplicable to minor parties. The Court finds little merit in this contention. The Act is clearly designed to regulate a broad scope of political activity. While there may be some uncertainty as to the outer confines of the Act's coverage, there is no uncertainty as to the inclusion of political parties which are formed for the purpose of advancing candidates for public office. The Court is therefore persuaded that the uncertainty or ambiguity in the law necessary for the application of abstention under *Pullman* is not present in the case at bar.

## II.

■ Citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, defendant McCann raises an alternative theory of abstention. It is conceded that the Act was violated on January 24, 1976, when the names of contributors and disbursement recipients were not disclosed. Shortly thereafter, the filing officer referred the matter to the district attorney's office.

Invoking principles of comity and federalism, McCann now urges the Court to stay its hand because of the impending civil prosecution of Norbert Francis. The Campaign Committee also appears to be potentially subject to prosecution.[12] The applicability of *Younger* to civil cases was recognized in *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

The difficulty with defendant's position is that no action was ever commenced against either Francis or the Campaign Committee. The absence of any confrontation with the state judiciary removes the basis for the exercise of equitable restraint. In *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Court discussed the inapplicability of *Younger* to threatened prosecutions:

. . . When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. In addition, while a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.

Moreover, no actions are even pending against the remaining plaintiffs. While these plaintiffs undoubtedly share common interests with Francis and the Campaign Committee, they are legally separate parties and cannot be said to be so "intertwined" as to warrant application of the same comity considerations. *Cf. Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). The remaining plaintiffs are, therefore, in a position to assert the claims at issue. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

## III.

The only remaining issue before the Court is whether the plaintiffs have met their burden of proof. The defendants concede that the plaintiffs are entitled to relief if they can satisfy the burden of proof set forth in *Buckley.*

We recognize that unduly strict requirements of proof could impose a heavy burden, but it does not follow that a blanket exemption for minor parties is necessary. Minor parties must be allowed sufficient flexibility in the proof of injury to assure a fair consideration of their claim. The evidence offered need

---

12. See footnote 4, supra.

show only a *reasonable probability* that the compelled disclosure of a party's contributors' names will subject them to threats, harassment or reprisals from either government officials or private parties. (Emphasis added). 424 U.S. at 74, 96 S.Ct. at 661.

The plaintiffs rely upon a series of affidavits which are essentially uncontroverted.[13] Norbert Francis, the secretary of the Campaign Committee, stated that he actively participated in the solicitation of contributions for the campaign of the Socialist Workers candidate for mayor of the City of Milwaukee. He further stated that potential contributors expressed reluctance to contribute and many refused to contribute because of the requirement of public disclosure of their names and addresses. Francis also noted that the Campaign Committee is primarily dependent upon small individual contributions in order to maintain its continued viability.[14]

Robert Schwarz, a local organizer for the Socialist Workers Party, stated that his efforts to obtain contributions for the party's mayoralty candidate were also hampered by the Act. He stated that potential contributors expressed an unwillingness to contribute for fear that their names and addresses would be publicly disclosed. Schwarz also stated that the Socialist Workers Party has approximately 39 members and has never elected a candidate to local, state or national office.[15]

Robert Schwarz and Claudia Roberson stated that they were harassed by members of the Milwaukee Police Department while selling socialist papers in the Fall of 1974. Both claimed to have been harassed because of their association with the Wisconsin Socialist Workers Party.[16] Michael Murphy stated that on July 12, 1975, he was harassed by both the Milwaukee Police Department and the National Socialist White People's Party (Nazi party) for the same reason.[17]

In addition to these local acts of harassment, the record is replete with evidence of widespread government surveillance and harassment on both a local and national level. For example, the affidavit of Warren T. Dean and supporting documents reveal acts of harassment and surveillance by the Madison Police Department during the period from 1969 through 1973.[18] Documents obtained from the F.B.I. reveal further harassment and surveillance on the federal level in 1962 and 1963.[19]

While some of this documentation is admittedly outdated, the only affidavit submitted in behalf of the defendants reveals that the Milwaukee Field Office of the F.B.I. continued its surveillance of the Socialist Workers Party until September 13, 1976, more than seven months after the initiation of this action.[20]

The plaintiffs also submitted a lengthy affidavit by Athan Theoharis, a historian and consultant to the United States Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities. The expertise of Professor Theo-

---

13. The only affidavit filed in behalf of the defendants was that of George Vopal dated October 19, 1976. This affidavit reveals that the Milwaukee Field Office of the F.B.I. was directed to discontinue its program of surveillance of the Socialist Workers Party on September 13, 1976. No affidavits were submitted to refute the various acts of harassment and surveillance set forth in the affidavits and exhibits submitted by the plaintiffs.

14. Affidavit of Norbert Francis dated February 2, 1976, filed February 4, 1977.

15. Affidavit of Robert Schwarz dated February 2, 1976, filed February 4, 1977.

16. Affidavits of Robert Schwarz and Claudia Roberson dated February 3, 1976, filed February 4, 1977.

17. Affidavit of Michael Murphy dated February 3, 1976, filed February 4, 1977.

18. Affidavit of Warren T. Dean dated February 19, 1976, filed February 19, 1977, and supporting documents.

19. Affidavit of John Sundquist dated February 16, 1976, filed February 19, 1976, and supporting documents.

20. Affidavit of George Vopol dated October 19, 1976, filed February 19, 1976, and supporting documents.

haris was not challenged by the defendants. This affidavit briefly summarizes the history of various programs of the F.B.I. which were designed to investigate the Socialist Workers Party and other dissident groups. Professor Theoharis expressed the following opinion:

> . . . On the basis of the *now public* record of what federal agencies did in the recent past, individuals might very well conclude that the mere disclosure of their contribution to unpopular causes could subject them to similar governmental harassment in the future. And that conclusion cannot be dismissed as fanciful.[21]

The defendants have not attempted to refute this record of harassment and government surveillance. They concede that such acts occurred. As the Court understands it, their position is that there is no evidence of *present* harm to anyone merely because he has contributed to the Campaign Committee. It is urged that all government surveillance and harassment has been terminated. Moreover, while there is evidence of prior harassment of members of the Socialist Workers Party, there is no evidence that contributors have ever been harassed. As such, the defendants contend that predictions of future harm are based on speculation.

With this the Court cannot agree. To require evidence of specific acts of harassment of contributors would impose an unduly strict burden on the plaintiffs. In *Buckley*, the Court established guidelines with respect to the burden of proof on minor parties.

> . . . The proof may include, for example, specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself. A pattern of threats of specific manifestations of public hostility may be sufficient. 424 U.S. at 74, 96 S.Ct. at 661.

The instant record includes proof of widespread surveillance and harassment on both a local and national level. These activities were directed at members of the organization and the organization itself. There is also evidence that individuals refused to contribute because of fear of public disclosure. This is precisely the type of proof sanctioned in *Buckley*.

In *Buckley,* unlike the case at bar, the only evidence offered consisted of the testimony of several minor party officials who stated that one or two persons refused to contribute to the Libertarian Party of New York for fear of public disclosure.[22] The Court found this evidence to be insufficient. Plaintiffs' showing is more analogous to that found in *Alabama*. There, petitioner's uncontroverted evidence of past acts of harassment against its members was found to be sufficient. 357 U.S. at 462, 78 S.Ct. 1163.

Defendants' contention that predictions of future harassment are based on speculation is not supported by the record. There is *some* evidence that the government has terminated its surveillance of dissident groups, but there is no assurance as to the accuracy of this evidence or that such programs will not be reinstituted in the future. While the Court would like to believe that harassment of dissident groups is a thing of the past, the history of such activity indicates to the contrary.

Moreover, the recent public disclosure of past government harassment presents a chilling reminder to those who might support this unpopular cause in the future. When this chilling effect is balanced against the interest of the state in public disclosure, the scales tip in favor of nondisclosure. While the state has a valid interest in the regulation of political activity, that interest must be reviewed in the context of the activity to be regulated. *Cf., Alabama, supra,* at 462–466, 78 S.Ct. 1163.

The Wisconsin Socialist Workers Party clearly supports an unpopular cause. It consists of approximately thirty-nine members. No party candidate has ever won a

---

**21.** Affidavit of Athan Theoharis dated August 6, 1974, filed September 20, 1976, at p. 4.

**22.** See, footnote 88, 424 U.S. at p. 72, 96 S.Ct. 612.

local, state, or national election. The financial report indicates that only twenty-seven persons contributed to the Committee during the period from January 1 to December 31, 1975. When viewed in this light, the minimal interest of the state in regulating this minor party must give way to the rights of those few individuals who seek to freely express their political beliefs.

## CONCLUSION

This memorandum and order constitutes the findings of fact and conclusions of law of the Court as required by Rule 52 of the Federal Rules of Civil Procedure.

NOW, THEREFORE, IT IS ORDERED that Sections 11.06(1)(a), (b), (g) and (h) of the Wisconsin Campaign Financing Act may not be constitutionally applied to the plaintiffs;

FURTHER ORDERED that the defendants be and are hereby enjoined from enforcing the aforestated provisions of the Wisconsin Campaign Financing Act against the plaintiffs.