432 F.Supp. 1255 (1977)
OREGON SOCIALIST WORKERS 1974 CAMPAIGN COMMITTEE, and Rita Moran, Treasurer, Oregon Socialist Workers 1976 Campaign Committee and Rita Moran, Treasurer, George Kontanis, and James Watson, Plaintiffs,
v.
Norma PAULUS, Secretary of State of the State of Oregon, Defendant.
Civ. No. 76-262.
United States District Court, D. Oregon.
May 31, 1977.
*1256 Patricia Watson, Northwestern Legal Clinic, Portland, Or., for plaintiffs.
James A. Redden, Jr., Atty. Gen., John C. McLean, Asst. Atty. Gen., Salem, Or., for defendant.
Before KILKENNY, Circuit Judge, and SKOPIL and SOLOMON, District Judges.
SKOPIL, District Judge.
This action presents a constitutional attack on the Oregon Campaign Disclosure Act, ORS 260.005 through 260.255. For the reasons stated below, we find that the Act is constitutional on its face and as applied to plaintiffs.

PARTIES
Plaintiffs are unincorporated associations formed for the purpose of supporting the campaigns for public office of candidates nominated by the Oregon Socialist Workers Party (SWP) in the 1974 and 1976 elections, the treasurer of these associations, and certain of the SWP candidates. Defendant is sued in his official capacity as Oregon Secretary of State.

THE ACT
Plaintiffs seek declaratory and injunctive relief against enforcement of certain portions of the Oregon Campaign Disclosure Act, supra. The relevant provisions of the Act provide in summary as follows. Each candidate and political committee in this state must designate a "political treasurer". ORS 260.035, 260.037. The treasurer must file certain periodic reports with the "filing officer", who in most cases is the Secretary of State. ORS 260.005(5). In these reports the treasurer must disclose the name, address, and occupation of each person or the name, address, and primary nature of each political committee which contributed an aggregate of more than $100 on behalf of a candidate for state-wide office or more than $50 on behalf of a candidate for other than a state-wide office. ORS 260.162(1)(a). The reports must also disclose all campaign expenditures, showing the amount and purpose of each. ORS 260.162(1)(b). A detailed timetable for the reports is set out in ORS 260.072. The Secretary of State is to prepare a summary of the reports he receives and make it available to the general public. ORS 260.255.
The Act further provides that the treasurer must keep detailed accounts of all contributions and expenditures. ORS 260.055(1). These accounts are subject to inspection by any opposing candidate and by the treasurer of any political committee for the same electoral contest. ORS 260.055(2).
The Secretary of State may enforce the Act by petitioning the Oregon Circuit Court to compel a candidate or treasurer to comply with the disclosure requirements. ORS 260.225. The Secretary may also impose a civil penalty after hearing, refuse to print a candidate's name on the ballot, and refuse to issue a certificate of election. ORS 260.228, 260.235(1), 260.245.

FACTUAL ALLEGATIONS
Many of the underlying facts in this case are not in dispute. In December, 1974, plaintiff 1974 Committee filed a required report with the Secretary but refused to identify contributors, sources of loans, and certain persons to whom expenditures were made. At the same time, the 1974 Committee petitioned the Secretary to issue regulations providing for exemption from the Act's disclosure requirements upon a showing that disclosure would infringe the constitutional rights of candidates or potential contributors.
The Secretary refused to issue the regulations (a proposed draft of which the 1974 *1257 Committee submitted with its petition), stating that his power to issue rules interpreting the Act did not extend to exempting affected parties from its enforcement. The Secretary obtained an order from the state Circuit Court directing the 1974 Committee to fully comply with the Act. The Secretary also imposed a civil penalty of $50 for failure to make the required disclosures.
Plaintiff 1976 Committee similarly refuses to disclose the names of affected contributors. We understand, however, that the Secretary has postponed any enforcement action against the 1976 Committee pending the outcome of this action.
The parties part company on their versions of the facts at this point. In summary, defendant denies the following contentions of plaintiffs:
1. The SWP, its members and supporters, have been subjected to "sweeping and systematic government harassment and surveillance" for almost thirty years. This official conduct has included illegal wiretapping, break-ins, and theft of documents.
2. The SWP, its members and supporters, have suffered private "manifestations of hostility by certain segments of the public", including economic reprisals, loss of employment, and acts and threats of physical coercion and violence.
3. As a result of the above, compliance by plaintiffs with the Act will "deter and intimidate persons from associating with, contributing to and supporting the plaintiff committees" and SWP candidates.
4. Similarly, compliance with the requirement to report expenditures would result in pressure being brought to bear on commercial establishments to deter them from providing necessary services (such as printing) to plaintiffs.

PROCEDURAL AND EVIDENTIARY POSTURE
A three-judge court was convened pursuant to 28 U.S.C. § 2281, which was in effect at the time plaintiffs commenced this action. See Act of August 12, 1976, P.L. 94-381, § 7, 90 Stat. 1120. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343. See 42 U.S.C. § 1983.
After the plaintiffs' motion for summary judgment and a number of prehearing conferences, each side agreed that oral testimony was not necessary; each has accordingly supplemented the record with various affidavits. It was agreed at oral argument that our decision was to be on the merits.
An Appendix to this opinion lists the evidentiary material submitted by the parties, along with our rulings on objections to admissibility (which we took under advisement at oral argument).

CONSTITUTIONAL CLAIM
The constitutional law applicable to this case is simply stated (though not necessarily simple to apply). The recent Supreme Court case of Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), involved attacks on the multitudinous provisions of the Federal Election Campaign Act. Of interest to us here is that the Court upheld reporting and disclosure requirements which are very similar to those in ORS Chapter 260. See 2 U.S.C. §§ 431, et seq. Despite its approval of the requirements under the facts in Buckley, however, the Court made clear that future cases  especially those involving minority parties  require a careful balancing between First Amendment freedoms on the one hand and valid governmental interests on the other.
This balancing process must begin with an analysis of the Buckley Court's identification of the rights possessed by a minor political party. The freedom to associate for political purposes is an integral part of the freedom of expression protected by the First Amendment. Further, an association has standing to assert the personal rights of its members to join together for common political purposes. N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).
*1258 In many cases, compelled disclosure of membership in or financial support of an organization "can seriously infringe on privacy of association and belief guaranteed by the First Amendment". Buckley, 424 U.S. at 64, 96 S.Ct. at 656. See Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). Since First Amendment rights deserve especially careful protection, more than a "mere showing of some legitimate governmental interest" is required to validate regulations which infringe on freedom of association. Buckley, 424 U.S. at 64, 96 S.Ct. [612] at 656. In other words, the governmental interest must be compelling. See Pollard v. Roberts, 283 F.Supp. 248 (3-judge court, E.D. Ark.1968), aff'd per curiam, 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968).
In Buckley the Court held that the following governmental interests were sufficiently compelling to justify the disclosure requirements imposed upon the parties in that case:
1. Informing the electorate concerning candidates' positions on the political spectrum and obligations to special interests.
2. Deterrence of actual bribery and corruption.
3. Detection of violations of campaign contribution limitations.
424 U.S. at 66-68, 96 S.Ct. 612. Balancing these governmental interests against the First Amendment rights of the parties, the Court noted that there was no record of harassment, either public or private, brought about by the compelled disclosure of contributors to the candidates involved in Buckley, 424 U.S. at 69, 96 S.Ct. 612. Compare N.A.A.C.P. v. Alabama, supra. The Court stated:
"There could well be a case, similar to those before the Court in [N.A.A.C.P. v.] Alabama and Bates [v. City of Little Rock], where the threat to the exercise of First Amendment rights is so serious and the state interest furthered by disclosure so insubstantial that the Act's requirements cannot be constitutionally applied." 424 U.S. at 71, 96 S.Ct. at 659. (footnote omitted)
The Buckley Court also held that the government interest in disclosure may be less compelling with respect to minor parties than to major parties:
"It is true that the governmental interest in disclosure is diminished when the contribution in question is made to a minor party with little chance of winning an election. As minor parties usually represent definite and publicized viewpoints, there may be less need to inform the voters of the interests that specific candidates represent. Major parties encompass candidates of greater diversity . . It is less likely that a candidate of, say, the Socialist Labor Party will represent interests that cannot be discerned from the party's ideological position.
"The government's interest in deterring the `buying' of elections and the undue influence of large contributors on officeholders also may be reduced where contributions to a minor party . . . are concerned, for it is less likely that the candidate will be victorious." 424 U.S. at 70, 96 S.Ct. at 659.
Even though the Court thus "opens the door" to recognizing a constitutionally mandated exemption for some small parties from disclosure requirements, it then "closes the door" to some extent in the following observation:
". . . But a minor party sometimes can play a significant role in an election. Even when a minor-party candidate has little or no chance of winning, he may be encouraged by major-party interests in order to divert votes from other major-party contenders." 424 U.S. at 70, 96 S.Ct. at 659. (emphasis added).
The Court declined to require a blanket exemption for minor parties. Rather, it set out the following standard  applicable to the present case  for determining whether, under the relevant facts, there is sufficient interference with First Amendment rights to warrant exemption from a disclosure statute:
". . . Minor parties must be allowed sufficient flexibility in the proof of injury *1259 to assure a fair consideration of their claim. The evidence offered need show only a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment or reprisals from either Government officials or private parties. The proof may include, for example, specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself. A pattern of threats or specific manifestations of public hostility may be sufficient." 424 U.S. at 74, 96 S.Ct. at 661.
While the facts are not clear cut in either direction, we find by a preponderance of the evidence that there exists no "reasonable probability" that disclosure of the names of contributors to the SWP will result in official or unofficial harassment of these contributors.[1] Each instance of alleged harassment set out in plaintiffs' affidavits is insufficient by itself to justify the conclusion that the valid governmental interests in disclosure are outweighed by the First Amendment rights of potential SWP supporters. A review of the evidence fails to reveal, moreover, any pattern of prior conduct, either public or private, of sufficient severity to meet the standard of proof of Buckley. The evidence shows, at most, a few isolated cases of the receipt of highly critical and negative telephone calls and letters. Most of these calls and letters have not been shown to be the result of SWP support as such, but are at least as likely to be the product of the other political activities of the affiants. Further, plaintiffs have made no showing of any present official investigation by either the FBI or the Portland Police Bureau.
Plaintiffs' only evidence that potential SWP contributors are deterred from supporting the party due to the Oregon disclosure requirements consists of two anonymous affidavits. Pl. Exs. L and R. We recognize that these affiants are in a difficult position. If they come forward and identify themselves before this court, they run the risk of subjecting themselves to the harassment they allegedly fear. While we have some sympathy for these affiants, our system of justice does not contemplate the judicial resolution of disputes based on secret testimony. Basic concepts of Due Process require, moreover, that defendant have the opportunity to rebut this testimony.
We find that the valid governmental interests recognized in Buckley outweigh the very minimal impact on First Amendment rights demonstrated by plaintiffs. The Court in Buckley noted, "The sources of a candidate's financial support . . . alert the voter to the interests to which a candidate is most likely to be responsive . . .." 424 U.S. at 67, 96 S.Ct. at 657. We feel that persons supporting specific parties and candidates should be willing to "stand up and be counted". In our democracy, the voting public is entitled to know what special interests are behind a potential office holder. The Buckley decision demonstrates that certain responsibilities, such as disclosure, can constitutionally be imposed on the exercise of First Amendment freedoms. Plaintiffs have failed to show that future disclosure of the identities of their contributors will subject these contributors to "threats, harassment or reprisals from either Government officials or private parties". 424 U.S. at 74, 96 S.Ct. at 661.
Another important governmental interest recognized in Buckley is the deterrence of *1260 actual bribery and corruption, both before and after an election. 424 U.S. at 67, 96 S.Ct. 612. While we are aware that the SWP is a small party, plaintiffs introduced no evidence that the SWP will be unsuccessful in future elections. Presumably, plaintiffs in fact will use their best efforts to elect SWP candidates to both state and local offices. On the present state of the record, therefore, we have no basis for concluding that one or more SWP candidates will not be in positions of power and responsibility in the foreseeable future. Even if SWP candidates will be uniformly unsuccessful at the polls, plaintiffs have made no showing that the SWP has not been and will not be a "spoiler" for major party interests, diverting votes from one major candidate and thus playing a significant role in an election. See Buckley, 424 U.S. at 70, 96 S.Ct. 612. The 1976 presidential election results in Oregon are a vivid example of this possibility.[2] For all that appears of record, the SWP will play a similar role in the near future.
In conclusion, we feel that plaintiffs have presented a record similar to that before the Court in Buckley. There the Court noted that no plaintiff had offered evidence of the kind appearing in N.A.A.C.P. v. Alabama, supra. Rather, plaintiffs relied on "the clearly articulated fears of individuals well experienced in the political process". 424 U.S. at 71, 96 S.Ct. at 660. The Court went on to say:
". . . At best they offer the testimony of several minor-party officials that one or two persons refused to make contributions because of the possibility of disclosure. On this record, the substantial public interest in disclosure . . . outweighs the harm generally alleged." 424 U.S. at 71-72, 96 S.Ct. at 660 (emphasis added) (footnote omitted).
We hold that plaintiffs have presented, if anything, a weaker case for exemption from disclosure than was before the Court in Buckley. We therefore deny plaintiffs' claim. Defendant may have judgment for costs.
This opinion constitutes findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52(a).

APPENDIX
The following is a list of the evidentiary materials which we considered in this case. Also noted are our rulings on evidentiary objections.

Joint
Agreed Statement of Facts

Plaintiffs
Secretary's Petition to Compel Filing of Contributions and Expenditures (Pl. Ex. A)
Affidavit of Eric Berman (Pl. Ex. B)
The hearsay objection is overruled. The declarations are not offered for the purpose of proving the truth of the matters asserted but to establish that the statements were made to affiant. Fed.R.Evid. 801(c). We have considered the declarations as tending to show harassment and as circumstantial evidence that the Portland Police Bureau was investigating affiant.
Affidavit of Eric Berman (Pl. Ex. C)
The hearsay objection is overruled. We have not considered the declarations as tending to prove the truth of the matters asserted. The relevancy objection is also overruled. The events described are not so remote in time as to be irrelevant to present conditions.
Affidavit of Kenneth Eardley (Pl. Ex. D)
The hearsay objection is overruled. Much of the affidavit is irrelevant. We have considered only the relevant portions.
*1261 Affidavit of Craig Johnson (Pl. Ex. E)
Affidavit of John Linder (Pl. Ex. F)
This affidavit is incorrectly referred to as Exhibit E in defendant's memorandum in opposition to summary judgment. The objections are overruled. The letters received by affiant are "fair political comment" in that affiant probably has no cause of action against the writers. Nevertheless, the letters are relevant evidence of a pattern of private threats and harassment.
Affidavit of Anne Powers (Pl. Ex. G)
Defendant's objection goes to the weight rather than the relevancy of this testimony. The affidavit constitutes some circumstantial evidence (albeit weak) of harassment due to SWP support.
Affidavit of Stacey Seigle (Pl. Ex. H)
The hearsay objection is overruled. The declarant's statement is not offered to prove the truth of the matter asserted. The statement is relevant as to the general climate surrounding SWP activities.
Affidavit of Stacey Seigle (Pl. Ex. I)
The objections are overruled. The content of the telephone threats is not offered to prove the truth of the matters asserted (i. e., that in fact the SWP would be "mopped-up"). The fact that Seigle and Kontanis were SWP candidates is circumstantial evidence that the notes they received were the product of their SWP affiliation.
Affidavit of Stacey Seigle (Pl. Ex. J)
Affidavit of Sara Smith (Pl. Ex. K)
The objection is sustained. Affiant only "assumes" that the persons she observed taking pictures were "plainclothesmen" or "agents". She asserts no personal knowledge.
Affidavit of "John Doe", Identifying Affidavit of Stacey Seigle (Pl. Ex. L)
This affidavit, as originally filed, was executed by a named individual. Counsel for plaintiffs later requested that the original affidavit be withdrawn and the "John Doe" affidavit substituted. Counsel stated that "John Doe" had been promised that his name would be kept confidential and that the original affidavit was filed in error. The accompanying affidavit of Stacey Seigle identifies "John Doe" as a past contributor to the SWP. Seigle also states that "Doe" refuses to make further contributions for fear of harassment should his name be disclosed. Taken together, these two affidavits are relevant as to the climate surrounding SWP fund-raising efforts. The assertion by "John Doe" that he would have contributed is hearsay.
Proposed Disclosure Exemption Rule (Pl. Ex. M)
Affidavit of Herbert Jordan and Attachments (Pl. Ex. N)
The hearsay objection is overruled. These FBI records of apparently illegal entries into SWP offices in New York fall within the public record exception to the hearsay rule. Fed.R.Evid. 803(8). Defendant apparently does not question the authenticity of the documents. Defendant's objection concerning remoteness in time goes to the weight rather than the admissibility of this evidence. This material is relevant on the issue of whether a continuing pattern of official harassment exists.
Deposition of Charles Trumble (Pl. Ex. O)
Trumble's testimony is relevant as to a possible continuing pattern of harassment. These activities of the Portland Police Bureau may have been proper under Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), but still have caused a "chilling effect" on the exercise of First Amendment rights by potential SWP supporters. An activity does not necessarily have to be illegal in order to constitute "harassment" under Valeo.

*1262 Affidavit of Lisa Potash (Pl. Ex. P)
This evidence is of little weight but is admissible.
Newspaper Clippings (Pl. Ex. Q)
The hearsay objection is sustained. Further, this material is not in affidavit form nor otherwise sworn to. Fed.R.Civ.P. 56(e).
Affidavit of "John Roe", Identifying Affidavit of Stacey Seigle (Pl. Ex. R)

See discussion on "John Doe" affidavit, supra.

Affidavit of Alan H. Selling (Pl. Ex. S)
U. S. Department of Justice Letter to Patricia Watson and Attachments (Pl. Ex. T)
The objection is sustained. This material is not in affidavit form nor otherwise sworn to. Fed.R.Civ.P. 56(e).
Affidavit of Matilde Zimmermann (Pl. Ex. U)
The Schlosser affidavit, attached to the Zimmermann affidavit, is hearsay.
Deposition of Bruce Baker

Defendant
Affidavit of Bruce Baker
Affidavit of James Davis
Affidavit of Philip Feldman
Affidavit of James E. Tomlinson
Affidavit of John C. McLean with Attached U. S. Attorney General's Guidelines on Domestic Security Investigations
The objections to the affidavits of Tomlinson and McLean (with attachments) are overruled. At oral argument both parties indicated that they desired to supplement the record with the Attorney General's guidelines. Since plaintiff does not attack the authenticity of the Guidelines filed by defendant, they will be received.
SOLOMON, District Judge, dissenting.
The Oregon Socialist Workers Party (OSWP) is a tiny, unpopular political party. It believes in the inevitability of world revolution. For many years it has been under continuous surveillance by government agents, many of whom joined the OSWP. Its offices have been broken into, and its members have been subjected to repeated harassment by the Federal Bureau of Investigation (FBI) and the police.[1] Apparently this type of surveillance and harassment was ordered stopped a few months before this action was filed.[2]
In Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court upheld the constitutionality of the disclosure requirements of the Federal Election Campaign Act. Nevertheless, the Court said that there could be cases involving minor parties "where the threat to the exercise of First Amendment rights is so serious and the state interest furthered by disclosure so insubstantial that the Act's requirements cannot be constitutionally applied." Buckley, supra at 71, 96 S.Ct. at 659.
I believe that this case comes within that standard.
*1263 In the November 1976 Presidential Election, the OSWP candidate in Oregon received less than one-half of one per cent of the votes cast for President. This is not a party likely to win the support of a significant segment of the electorate or affect the outcome of any election. None of the evils which the Oregon Campaign Disclosure Act seeks to remedy is present here and, therefore, the state interest in disclosure is insubstantial.
In Buckley, the Court recognized that even if there is no harassment from government officials, a reasonable probability of threats, harassment, or reprisals from private parties is enough to defeat compelled disclosure of a party's contributors:
"Minor parties must be allowed sufficient flexibility in the proof of injury to assure a fair consideration of their claim. The evidence offered need show only a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties. The proof may include, for example, specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself. A pattern of threats or specific manifestations of public hostility may be sufficient." Buckley, supra at 74, 96 S.Ct. at 661.
OSWP's proof of a pattern of threats and public hostility against its members, contributors and supporters was meager, but these facts will always be difficult to substantiate in traditional evidentiary terms. People who have been harassed will be reluctant to testify for fear of further reprisals.[3]
I believe that the OSWP has met its burden of proof on this issue.
The record of the treatment of the OSWP by law enforcement agencies and the general unpopularity of the party's program is sufficient evidence that compelled disclosure of contributions will effectively prevent potential contributors from exercising their First Amendment rights of expression and assembly through the electoral process.
We must preserve the right of splinter parties to participate in the political process. ". . . [W]e should be eternally vigilant against attempts to check the expression of opinions that we loathe and believe to be fraught with death . .." Abrams v. United States, 250 U.S. 616, 630, 40 S.Ct. 17, 22, 63 L.Ed. 1173 (1919) (Holmes, J., dissenting). The alternative will force minor parties underground and create a significantly greater risk to our democratic society.
I would hold that the Oregon Campaign Disclosure Act is unconstitutional as applied to the Oregon Socialist Workers Party.
NOTES
[1] The dissenting opinion, especially its first paragraph, suggests that the court has made certain findings of fact concerning the beliefs of SWP members and the party's alleged history of surveillance and harassment. While there is some evidence on the record in support of such contentions, we feel that plaintiffs have failed to meet their burden of proof on these allegations. As the dissent concedes, the proof was "meager".

Further, even if we were to join in the findings of fact suggested by the first paragraph of the dissent, plaintiffs failed to persuade us that compelled disclosure will inhibit the exercise of anyone's First Amendment rights. We must respectfully decline, therefore, to accept the conclusions reached in the dissenting opinion.
[2] The electors for Gerald Ford received 492,120 votes, while the electors for Jimmy Carter received 490,407 votes. Thus, Ford won by fewer than 2,000 votes in Oregon. The electors for Eugene McCarthy received 40,192 votes. It may well have been, therefore, that McCarthy's candidacy was the determinative factor in this election. The source of these election statistics is the Governor's Certificate of Election dated December 13, 1976.
[1] On the national level, members and supporters of the Socialist Workers Party were barred from government employment because of party membership, Gordon v. Blount, 336 F.Supp. 1271 (D.D.C.1971); subjected to deportation proceedings, Scythes v. Webb, 307 F.2d 905 (7th Cir. 1962); and given undesirable discharges from the armed forces, Stapp v. Resor, 314 F.Supp. 475 (S.D.N.Y.1970). An unaffiliated high school student was investigated by the FBI for writing a letter to the party head-quarters in New York, Paton v. LaPrade, 524 F.2d 862 (3rd Cir. 1975).
[2] The Oregon Attorney General introduced an affidavit that the FBI on September 13, 1976, terminated its surveillance of the Socialist Workers Party and other organizations and "their chapters, members and leaders".

A former member of the Intelligence Division of the Portland Police Department, in a deposition, described the manner in which the Portland Police conducted its surveillance of the OSWP. He admitted that the Portland Police received information on the OSWP from informers; kept files on party members; photographed members and supporters at public demonstrations; and exchanged information on the OSWP with the FBI.
[3] There is evidence that the FBI sent the names of persons attending the SWP conventions to the Civil Service Commission and that the Commission used the names as a basis for questioning Government employees or potential Government employees. Socialist Workers Party v. Attorney General of the United States, 510 F.2d 253 (2nd Cir. 1974).