**1980 ILLINOIS SOCIALIST WORKERS CAMPAIGN, et al., Plaintiffs,**

v.

**STATE OF ILLINOIS BOARD OF ELECTIONS, et al., Defendants.**

**No. 81 C 1919.**

United States District Court,
N. D. Illinois, E. D.

Nov. 30, 1981.

On Motion to Alter or Amend
Judgment Jan. 29, 1982.

Matthew J. Piers, Chicago, Ill., for plaintiffs.

William P. Ryan, Acting General Counsel, James M. Scanlon, Ill. State Bd. of Elections, Richard K. Means, Elizabeth J. Cohen, Asst. State's Attys., Roger P. Flahavan, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

The 1980 Illinois Socialist Workers Campaign Committee and several of its current and former members brought this action for declaratory and injunctive relief against the State of Illinois Board of Elections and several state officials, to prevent enforcement of the reporting and disclosure provisions of the Illinois Act to Regulate Campaign Financing, Ill.Rev.Stat. ch. 46 ¶¶ 9–10, 9–11, 9–13, 9–26 (1979). By stipulation of the parties, the case has been tried to the court on an agreed record consisting of the administrative record developed before the Illinois Board of Elections.

Plaintiffs claim that compelled disclosure of contributors' names and disbursements to Socialist Worker Party candidates will subject the contributors to threats, harassment and reprisals from government and private parties which will chill the exercise of their first amendment rights to free expression and freedom of association. Plain-

tiffs claim that the Illinois Act is unconstitutional because it fails to provide an expeditious administrative mechanism for adjudicating claims of exemption based on first amendment grounds. Alternatively, they claim that even if the Act is valid on its face, it is unconstitutional as applied to the Socialist Workers Party because plaintiffs have demonstrated that application of the reporting and disclosure provisions will violate their first amendment rights. Defendants, Attorney General of the State of Illinois and State's Attorney of Cook County, deny that the statute is unconstitutional either on its face or as applied to these plaintiffs, and assert that this court should abstain from any ruling on the merits of this case to afford the Illinois courts an opportunity to construe the statute and avoid a decision on the constitutional questions presented. The defendant Board of Elections apparently concedes that the Act is unconstitutional as applied to these plaintiffs, but argues that the procedures for adjudicating plaintiffs' claims are constitutionally adequate and disagrees with the scope of the requested relief.

## FINDINGS OF FACT

### A. *Parties*

Plaintiffs are the 1980 Illinois Socialist Workers Campaign Committee and Socialist Workers Mayoral Campaign Committee ("Committees"), unincorporated political organizations formed to promote and support candidates of the Socialist Workers Party ("SWP") in the 1980 general and 1979 Mayoral elections, and individuals who are current or former members of the Committees.

Defendant State of Illinois Board of Elections ("Board"), is an administrative body appointed by the Governor of Illinois to supervise implementation of the state election laws. *See* ch. 46 Ill.Rev.Stat. ¶ 1A–1. Defendants Tyrone C. Fahner and Richard M. Daley are the Attorney General of Illinois and State's Attorney of Cook County respectively, with authority to prosecute willful violations of the Act. Ill.Rev.Stat. ch. 46, ¶ 9–26. The remaining defendants are members of the Board.

### B. *The Legislative Scheme*

The Illinois Act to Regulate Campaign Financing ("Act") was passed by the Illinois legislature in 1978. Paragraph 9–10 requires the treasurer of every political committee to file reports of campaign contributions for each election in which the committee has accepted contributions or made expenditures. This section also requires the treasurer of each political committee to file annual reports of campaign contributions and expenditures.

Paragraph 9–11(4) requires that reports of campaign contributions disclose the names and addresses of every person who has contributed in excess of $150.00 in the previous twelve months. Paragraph 9–11(6) contains a similar requirement for any transfer of funds to or from a political committee.

Paragraph 9–13(4) requires that the annual report also disclose the name and address of every person who has contributed in excess of $150.00 during that reporting year. Further, ¶ 9–13(11) requires that the report disclose the names and addresses of every person who has received expenditures in excess of $150.00 in the previous twelve months.

Paragraph 9–26 makes the willful filing of incomplete information a misdemeanor.

### C. *Procedural Background and Agreed Record*

In January, March, April, July and October of 1980, the Committees filed the required reports with the Board, but failed to disclose the names and addresses of contributors or those who received campaign expenditures. The reports included only the dates and amounts of contributions received by the Committees, and were accompanied by letters explaining the information was being withheld based on first amendment grounds consistent with a stipulated settlement entered into by the Federal Election Commission and the SWP in *Socialist Workers 1974 National Campaign Committee v. Federal Election Commission*, No. 74–1338 (D.D.C.1979).

On September 4, 1980 the Board issued citations directing plaintiffs to comply with the Act and provide the withheld information. On November 24, 1980 the Board filed administrative complaints against all of the plaintiffs, alleging violations of the Act. The Board held an administrative hearing on November 25, December 17 and 30, 1980, before an appointed Hearing Officer. On January 6, 1981 the Hearing Officer issued a memorandum opinion finding that while plaintiffs had violated the Act, "there is no doubt that respondents [plaintiffs here] have established a basis for an exemption by meeting the standards of *Buckley v. Valeo*, 424 U.S. 1 [96 S.Ct. 612, 46 L.Ed.2d 659] (1976)", but concluding that the Board had no authority to grant an exemption from the disclosure requirements. AR at 2, 6, 21–22. The Board, on January 19, 1981, in accordance with the recommendation of their General Counsel, adopted the findings of fact and conclusions of law of the hearing examiner, and directed plaintiffs to provide the withheld financial information. On February 6, 1981, counsel for the Board notified plaintiffs that the Board intended to "proceed to enforcement" of the Order.

The parties have agreed to try this case on an agreed record ("AR") which consists of the evidence adduced at the state administrative hearing.

The record discloses that the Committees received a combined total of less than $30,-000 in contributions during the reporting periods, and that none of their candidates for public office received more than one percent of the votes cast.

We have examined the evidence presented at the administrative hearing and fully concur with the findings of the Hearing Officer that

> [t]here can be no doubt that Respondents and those having contact with Respondents have been subjected to harassment, threats and surveillance by government agencies and private parties. In many instances their rights have been violated as contracts [sic] designed to discourage association with Respondents have been made with employers, landlords, and business associates.
>
> There is no doubt that a nexus exists between those associated with the Respondents and activities of various governmental agencies and private parties. One need only examine the exhibits submitted by the Respondents to arrive at this conclusion. AR at 21.

Those exhibits disclose numerous instances of harassment and surveillance by both government officials and private persons, including burglaries and thefts by the Federal Bureau of Investigation; surveillance by other federal agencies including the Central Intelligence Agency, Internal Revenue Service, Military Intelligence and the Immigration and Naturalization Service; surveillance and harassment by local police departments, including the Chicago Police Department; violence and coercion against SWP members, including those whose names have appeared on campaign related lists.

Potential contributors are undoubtedly aware that contributions of more than $150 will result in their identification as supporters of the SWP. There is evidence that numerous individuals have expressed to members and supporters of the SWP their unwillingness to contribute to the Party in light of the disclosure provisions, and the likelihood of consequent repercussions. Individuals who do contribute appear to expose themselves to a substantial danger of harassment and invasions of their privacy.

The record discloses that surveillance of the SWP commenced at the national level in 1940 (one year after the Party was formed), AR at 325, and was particularly intense during the 1960's and 1970's. Specific acts of violence against the SWP, including the firebombing of their Chicago office, theft of records, and threatening phone calls to SWP members, are detailed through at least 1978. Testimony of Dr. Bruce Scheff, AR at 116–24. Witnesses testified to their belief, through reports in the media, that government harassment has occurred through 1981. See e.g., AR at 122–23. Specific acts of government generated harassment are detailed at least through 1976.

Based on this evidence the Hearing Officer and the Board concluded that enforcement of the Act would violate the first amendment rights of the SWP and its supporters. AR at 2, 21–21A.[1] However, the Board refused to relieve the plaintiffs of their obligation to file under the Act because "the Board has no authority to grant an exemption to Respondents from the requirements of Sections 9–11 and 9–13 of the [Act]," Order of the Board, AR at 3, and to do so "would result in the Board exceeding the scope of authority it has been delegated by the Illinois Legislature." Opinion of the Hearing Officer, AR at 21A.

## CONCLUSIONS OF LAW

This court has jurisdiction over the subject matter of this case and the parties herein pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202. Defendants Fahner and Daley argue that, notwithstanding our jurisdiction, we should abstain from considering the merits of this case to give the Illinois Courts an opportunity to construe the Act in question. We disagree.

■ Abstention is appropriate where a state court decision on a state statute as yet unconstrued might obviate the need for a decision on the merits of a federal constitutional claim. *See Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The concept of "Pullman" abstention is grounded in the premise that there is an unsettled question of state law which could be decided in such a way as to avoid the need to decide the federal constitutional issue. Thus, "abstention is not indicated if the state law is clear on its face, or if its meaning has already been authoritatively decided by the state courts, or if the constitutional issue would not be avoided or changed no matter how the statute is construed." 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4242 at 456–58 (1978) (footnotes omitted).

■ In the instant case, abstention is inappropriate for two reasons. First, there is no ambiguity in the statute itself. As the Board and Hearing Officer concluded, the statute is plain on its face and does not vest the Board with discretion to permit exemptions from the filing requirements. Defendants Fahner and Daley cite no authority to the contrary and offer no other reasonable construction of the Act which avoids the question before us. The law is clear that "[w]here there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Wisconsin v. Constantineau*, 400 U.S. 433, 440, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971). *See also New Motor Vehicle Board of California v. Fox*, 439 U.S. 96, 100 n. 3, 99 S.Ct. 403, 407 n. 3, 58 L.Ed.2d 361 (1978); *Kusper v. Pontikes*, 414 U.S. 51, 55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973). Cf. *Wisconsin Socialist Workers 1976 Campaign Committee v. McCann*, 433 F.Supp. 540 (E.D.Wis.1977) (three judge court) (declining to abstain on substantially the same facts under Wisconsin disclosure act).

■ Second, and more importantly, abstaining in favor of the state court would not avoid the need for a decision on the constitutional claim; it would simply compel either the state court or the Board on remand to determine if plaintiffs have made the necessary showing to qualify for exemption under the standards of *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Where the constitutional question must, of necessity, be decided by some forum, abstention is inappropriate. *See Baggett v. Bullitt*, 377 U.S. 360, 375–79, 84 S.Ct. 1316, 1324–27, 12 L.Ed.2d 377 (1964). Thus, we proceed to the merits of plaintiffs' first amendment claim.

■ It is well established that compelled disclosure of membership lists and other material can work a severe hardship, particularly on those whose political beliefs are unpopular or outside the mainstream. *NAACP v. Alabama*, 357 U.S. 449, 462, 78

---

1. The page of the Hearing Officer's Opinion, following page 21 in the agreed record, has no number. For convenience the Court will refer to it as page 21A.

S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958). *See also Gibson v. Florida Legislative Investigation Committee,* 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1962); *Bates v. Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). The right to freely associate with the political party of one's choosing and participate in the electoral process, without fear of intimidation or harassment, is a particularly important safeguard in a democratic system. *See Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975); *Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973).

Nevertheless, the Supreme Court in *Buckley* upheld against first amendment attack the extensive reporting and disclosure provisions imposed on political parties by the Federal Elections Campaign Act of 1971 ("FECA"), 2 U.S.C. § 431 *et seq.* (1976). 424 U.S. at 60–74, 96 S.Ct. at 654–61. The Court found that regulation of campaign finances was supported by the substantial governmental interest in deterring corruption through publicity, and informing the voters of the source of a candidate's support. *Id.* at 67–68, 96 S.Ct. at 657–58. The same is clearly true of the Illinois Act. Moreover, the level of contribution which triggers the reporting obligation is higher than in the FECA, while the nature of information required is substantially similar. Thus, there can be no question that the Act is supported by a legitimate governmental interest and meets the requirements of *Buckley.*

However, in rejecting a blanket exemption for minor parties from the reporting requirements, the Court specifically left open the possibility that "[t]here could well be a case, similar to those before the Court in *NAACP v. Alabama* and *Bates,* where the threat to the exercise of First Amendment rights is so serious and the state interest so insubstantial that the Act's requirements cannot be constitutionally applied." *Id.* at 71, 96 S.Ct. at 659. The case at bar is just such a case.

The Court provided guidance on how to judge a claim for an exemption based on first amendment grounds:

We recognize that unduly strict requirements of proof could impose a heavy burden.... Minor parties must be allowed sufficient flexibility in the proof of injury to assure a fair consideration of their claim. The evidence offered need show only a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties. The proof may include, for example, specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself. A pattern of threats or specific manifestations of public hostility may be sufficient. *Id.* at 74, 96 S.Ct. at 661.

The SWP is at present, and has been since its inception in 1939, a minor party, receiving less than one percent of the vote in the last election on both state and national levels. The governmental interest in disclosure of its contributors' names is, therefore, substantially reduced. The Board concluded that it had "no doubt," based on the record before it, that the SWP had made the showing required by *Buckley.* Courts and administrative bodies in Minnesota, Wisconsin, California, Washington and the District of Columbia, have granted exemptions to the SWP from similar state disclosure laws. *See Wisconsin Socialist Workers 1976 Campaign Committee v. McCann; Doe v. Martin,* 404 F.Supp. 753 (D.D.C.1975); *In Re Manual* No. AE 77,005 (California Fair Political Practices Commission, March, 1977); *Socialist Workers 1974 Washington State Campaign v. Washington Public Disclosure Commission,* Nos. 52,505, 54,772 (Wash.Sup.Ct., April, 1977) (transcript of oral opinion), AR at 427–59; *In the Matter of Minnesota Socialist Workers 1974 Campaign Committee Request for Exemption,* No. H–0001 (Minn. State Ethics Comm., October, 1974), AR at 692–97.

■ In the face of the overwhelming evidence in the record, the conclusion of the Board, and the consistent granting of an exemption by other states, the Attorney

General steadfastly contends that plaintiffs have failed to demonstrate a "reasonable probability" of continuing threats, harassments, or reprisals. His position is based on the argument that evidence of acts against the SWP outside of Illinois are irrelevant and that no "present" evidence of threats or harassment are included in the record. We find this position incredible, and wholly without support either in law or on these facts.

Even if defendants'[2] limited view of the scope of our inquiry were correct, plaintiffs have still established their case with uncontroverted evidence that the SWP's Chicago headquarters was firebombed and burglarized in late 1978, AR at 121–22, Exhibits 13–15, and stipulated evidence that the Chicago Police Department engaged in surveillance of public and private meetings of the SWP as recently as 1975. AR at 101–02. Moreover, evidence of a pattern of violence and harassment directed against the SWP nationwide clearly falls within the Supreme Court's mandate to permit flexibility in the proof adduced to support an exemption claim. *Accord Wisconsin Socialist Workers 1976 Campaign v. McCann*, 433 F.Supp. at 547–48. It would be difficult in the extreme for plaintiffs to make their case if they were required to show conduct against them occurring to this very day. Much of the evidence in this record was culled from government documents, local police files, and discovery in other lawsuits, all of which took years to uncover. *Id.* In short, the evidence presented by this record clearly establishes a pattern of harassment and threats directed against supporters of an unpopular political philosophy by government and private individuals. We hold, therefore, that defendants cannot constitutionally apply the reporting and disclosure sections of the Act to these plaintiffs.

Before proceeding to the nature and scope of relief, we address plaintiffs' contention that the Act is unconstitutional because it fails to provide an expeditious administrative remedy for determining whether an exemption from the Act is required. The gravamen of plaintiffs' claim is that the Act "chills" freedom of association and expression by requiring a political party to litigate before establishing their right to a *Buckley* based exemption, and that a less burdensome alternative is available in the form of an administrative hearing. Plaintiffs rely on *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) and *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 547, 95 S.Ct. 1239, 1241, 43 L.Ed.2d 448 (1975) for the proposition that requiring parties to initiate litigation to vindicate their first amendment rights is itself constitutionally impermissible, and cite a number of states which have adopted procedures permitting state agencies to grant exemptions where appropriate.

Plaintiffs' reliance on *Freedman* and *Southeastern*, while creative, is misplaced. Both those cases involved prior restraint of expression by a state which created an ongoing injury before the adjudication took place. Here, no reports or disclosures have been required in advance of this litigation and this court has full power to prevent any future disclosure which might result in further threats or harassment against SWP members.

Plaintiffs claim that the "uncertainties and burdens" of litigation, as opposed to administrative review, have an unconstitutional impact on *Buckley*-exempt minor parties. This argument proves too much; the Court in *Buckley* specifically rejected the claim that all minor parties should be exempt from the FECA and instead required a specific factual showing of a likelihood of first amendment injury.[3] There is

---

2. By "defendants" in this portion of the opinion, we refer only to defendants Fahner and Daley. The Board does not join in the argument that plaintiffs have failed to prove that application of the Act to the SWP will cause an unconstitutional injury.

3. We note that while the Court in Buckley did not specifically address the issue of what forum should be used to establish an exemption, it did state that "[w]here it exists the type of chill identified in *NAACP v. Alabama* can be shown. We cannot assume that courts will be insensitive to similar showings when made in future

no procedure we know of that can assure potential contributors to an unpopular party that their names will not ultimately be disclosed to the public. No matter what procedure Illinois adopted, plaintiffs would be required to make a substantial factual record to sustain their claim to an exemption. There is no evidence in the record that an administrative hearing and subsequent appeals procedure has any more or less "chilling effect" on potential contributors than a declaratory judgment action in state or federal court. The uncertainty accompanied by contribution is the result of disclosure laws themselves, not the particular procedure created for establishing an exemption.

■ In light of the extremely tenuous nature of the additional burden created by court versus administrative procedures, the significant state interest advanced by the Act as a whole, and the availability of appropriate relief through this proceeding, we cannot say that failure to vest the Board with the authority to grant an exemption renders the Act unconstitutional.

Nevertheless, it is clear that paragraphs 9–10, 9–11 and 9–13 of the Illinois Act to Regulate Campaign Financing cannot constitutionally be applied to these plaintiffs.

Therefore, the defendants are permanently enjoined and restrained from enforcing paragraphs 9–10, 9–11 and 9–13 of the Illinois Act to Regulate Campaign Financing against the plaintiffs.[4]

## ON MOTION TO ALTER OR AMEND JUDGMENT

Defendant, State Board of Elections, has moved pursuant to Fed.R.Civ.P. 59(e) to alter or amend the judgment issued in this case on November 30, 1981. Plaintiffs have objected to the motion and the other defendants have not responded. We have concluded that our original judgment is overbroad in enjoining the Board from enforcing ¶¶ 9–10, 9–11 and 9–13 of the Illinois Act to Regulate Campaign Financing, Ill.Rev.Stat. ch. 46, and therefore modify it as follows.

Defendants are permanently enjoined and restrained from enforcing the following paragraphs of the Illinois Act to Regulate ampaign Financing against these plaintiffs:

(a) Sections 9–11(1) and 9–13(1) insofar as they require the address of the political committee to be disclosed. Plaintiffs may rely on a post-office box or some other means of permitting the defendants to communicate with them.

(b) Sections 9–11(4) and 9–13(4) insofar as they require disclosure of the names and addresses of individual contributors.

(c) Sections 9–11(6) and 9–13(6) insofar as they require the disclosure of the names and addresses of any political committees from or to which the reporting committee received or made any transfer of funds.

(d) Sections 9–11(7) and 9–13(7) insofar as they require disclosure of the names and addresses of lenders and/or endorsers of loans by or to such committees.

(e) Section 9–13(11) insofar as it requires the disclosure of the names and addresses of persons receiving expenditures from such committees.

(f) Section 9–13(12) insofar as it requires the disclosure of the names and addresses

cases." 424 U.S. at 74, 96 S.Ct. at 661. The statement belies the notion that an administrative hearing is the only forum where claims of exemption from disclosure requirements can be heard.

4. Defendants argue that permanent injunctive relief is inappropriate in this case because of the possibility that the SWP will someday become a significant factor in an election and the harassment they have been subject to will cease. See *Oregon Socialist Workers v. Paulus*, 432 F.Supp. 1255 (D.Or., 1977) (finding the evidence insufficient to establish the claim for an exemption). We agree that if circumstances changed an exemption from the disclosure laws would no longer be appropriate. However, the appropriate procedure where a constitutional violation is initially established is to require the defendant to seek modification of the injunction based on a showing of changed circumstances. See generally *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932); *United States v. City of Chicago*, 663 F.2d 1354 (7th Cir. 1981).

of persons receiving expenditures or reimbursement for personal services or salaries from such committees.

(g) Section 9–13(14) insofar as it requires the disclosure of the names and addresses of any person to whom the committees owe debts or obligations.

(h) Section 9–10, in part. The injunction shall not relieve plaintiffs from the obligation to file reports at the places and on the dates required by this section, but such reports need not include any of the material covered by paragraphs (a) through (g) above. The injunction shall not relieve plaintiffs of the obligation to preserve the reports filed, but those reports need not include any information required under the Act which they are exempt from filing by virtue of paragraphs (a) through (g) above.[1]

The provisions of sections 9–11 and 9–13 which remain in force (9–11(2), (3), (5), (8), (9), (10), and 9–13(2), (3), (5), (8), (9), and (10)) require only a general description of the scope and purpose of the political committee and statements of total amounts collected and spent from individual and group activities without requiring disclosure of any names or addresses of the participants. They are not, therefore, covered by the reasoning of our decision of November 30, 1981.

The motion of the State Board of Elections to alter or amend the judgment is accordingly granted insofar as it is consistent with paragraphs (a) through (h) of this order. Plaintiffs are directed to submit appropriate injunction order within seven (7) days. Cause set for entry of injunction on February 12, 1982 at 9:30 a. m.

---

1. Plaintiffs in their reply to this motion raise the issue of whether the record keeping requirements of section 9–7 of this Act can be constitutionally applied to them. *See FEC v. Hall-Tyner Election Campaign Committee*, 524 F.Supp. 955 (S.D.N.Y., 1981). That section of the Act has not previously been challenged in this case and none of the extensive briefs addresses the questions raised by that section. We therefore express no opinion as to the application of that section of the Act to these plaintiffs.